# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

CASE NO. _____-CIV _____/_____

LATELE TELEVISION C.A., a Bolivarian
Republic of Venezuela corporation,

           Plaintiff,

        v.

TELEMUNDO COMMUNICATIONS GROUP,
LLC, a Delaware limited liability corporation, and
TELEMUNDO TELEVISION STUDIOS, LLC, a
Delaware limited liability corporation, TELEMUNDO
STUDIOS MIAMI, LLC, a Delaware limited liability
corporation, TELEMUNDO NETWORK GROUP,
LLC, a Delaware limited liability corporation,
TELEMUNDO INTERNACIONAL, LLC, a Delaware
limited liability corporation,

           Defendants.

**JURY TRIAL DEMANDED**

_____/

## COMPLAINT

Plaintiff, LaTele Television C.A ("LaTele"), a Bolivarian Republic of Venezuela corporation, by and through counsel, hereby files the following complaint against the defendants, Telemundo Television Studios, LLC, Telemundo Studios Miami, LLC, Telemundo Network Group, LLC and Telemundo Internacional, LLC (collectively, the "Telemundo Entities") and Telemundo Communications Group, LLC ("Telemundo") and states as follows:

### INTRODUCTION

1.    This lawsuit stems from the Defendants' production, broadcast and distribution of a telenovela, *El Rostro de Analia* ("*El Rostro*"), which unlawfully copies the protected elements of LaTele's *Maria Maria*, a widely popular telenovela that debuted in Venezuela in 1989. *El*

*Rostro's* similarities to *Maria Maria* are of such a breadth and extraordinary nature that they can only be explained by copying – which is unsurprising given that the Defendants hired the author of *Maria Maria* to develop *El Rostro*.  The resulting product was also a telenovela, which conveys a substantially similar story to *Maria Maria*, and which viewers (and the press)  have coined as a remake or retelling of *Maria Maria*.

## PARTIES, JURISDICTION AND VENUE

### *The Parties*

2.      Plaintiff, LaTele, is a company organized and existing under the laws of Venezuela. LaTele is a Venezuelan television network, formerly known as Marte CVT Producciones de Television, S.A. ("Marte TV"), that broadcasts original as well as imported television programming.

3.      Defendant, Telemundo Communications Group, LLC ("Telemundo"), is a Delaware corporation with its principal place of business in Hialeah, Florida.  Telemundo is a division of NBCUniversal Media, LLC, is the parent company of the Telemundo Entities, and it produces and distributes original Spanish-language programming within the United States and worldwide on the Telemundo television network ("Telemundo TV").  Telemundo TV reaches approximately ninety-four percent (94%) of Hispanic households in the United States in two hundred ten (210) markets by virtue of fourteen (14) Telemundo-owned stations, an independent station in Puerto Rico, forty-six (46) broadcast affiliates and over one thousand (1,000) cable affiliates broadcast in over one hundred twenty (120) countries. Telemundo TV is also available over the Internet and on mobile streaming devices.[1]  By Telemundo's own account, telenovelas are a staple of its prime-time schedule, and the historical increase in its prime-time audience

---

[1]   Additionally, Telemundo recently launched a digital out-of-home medium (that it calls Telemundo en tu Mundo) through which it broadcasts the Telemundo Programming in more than two hundred (200) grocery stores, eight hundred (800) retailers, two thousand (2,000) metro buses and major entertainment arenas frequented by Hispanics.

share is attributable to the successes of telenovelas, such as *El Rostro*. LaTele is informed and believes, and on this basis alleges, that Telemundo was involved in the approval and development of *El Rostro* and that some of the acts described herein as having been committed by Telemundo Network (as defined below) and Telemundo Miami (as defined below) may have also been committed by Telemundo and its agents.

4.     Defendant, Telemundo Network Group, LLC ("Telemundo Network"), is a Delaware corporation with its principal place of business in Hialeah, Florida. Telemundo Network is the second-largest Spanish-language content producer in the world and owns and operates Telemundo TV, which is the second-largest Spanish-language television network in the United States.

5.     Defendant, Telemundo Television Studios, LC ("Telemundo Studios"), is a Delaware corporation with its principal place of business in Hialeah, Florida.  Telemundo Studios operates a full-service television studio located in Hialeah, Florida, where a significant portion of the Telemundo programming is produced and filmed. Telemundo Network is the managing member of Telemundo Studios.  LaTele is informed and believes, and on this basis alleges, that Telemundo Studios was involved in the development of *El Rostro* and that some of the acts described herein as having been committed by Telemundo Network and Telemundo Miami may have been committed by Telemundo Studios and its agents.

6.     Defendant, Telemundo Studios Miami, LLC ("Telemundo Miami"), is a Delaware corporation with its principal place of business in Hialeah, Florida.  Telemundo Miami creates, develops and produces the Telemundo programming for Telemundo TV and for other broadcasters located in Latin America.  Telemundo Miami adapted and reproduced *El Rostro* in its studio in Hialeah, Florida, and is listed and accredited as being the producer of *El Rostro*.

Telemundo Studios is the managing member of Telemundo Miami.

7.     Defendant, Telemundo Internacional, LLC ("Telemundo Internacional"), is a Delaware corporation with its principal place of business in Hialeah, Florida. Telemundo Internacional is Telemundo's distribution company, and is principally responsible for selling, licensing and distributing the Telemundo programming to foreign markets. LaTele is informed and believes, and on this basis alleges, that Telemundo Internacional is involved in the development of *El Rostro* and that some of the acts described herein as having been committed by Telemundo Network and Telemundo Miami may have been committed by Telemundo Internacional and its agents.    Telemundo Network is the managing member of Telemundo Internacional, which is operated by Telemundo.

8.     At all relevant times, the Defendants were involved in the production, development, distribution, licensing, sale and public display of the telenovela, *El Rostro*, which infringes on LaTele's copyrighted works.

9.     At all relevant times, Telemundo and Telemundo Internacional have possessed the right and ability to supervise Telemundo Network and Telemundo Miami's creation, production, development, broadcast and distribution of the Telemundo Programming, including but not limited to Telemundo Network and Telemundo Miami's decision to infringe on LaTele's intellectual property in the telenovela, *Maria Maria*, as set forth below.

10.    At all relevant times, Telemundo and Telemundo Internacional had knowledge of Telemundo Network and Telemundo Miami's decision to infringe on LaTele's intellectual property in the telenovela, *Maria Maria*, and induced, caused or materially contributed to Telemundo Network and Telemundo Miami's infringing conduct, as set forth below.

*Jurisdiction and Venue*

11.     At all relevant times, the Defendants have conducted business in the Southern District of Florida and are, therefore, subject to the jurisdiction of this Court.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Alternatively, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because LaTele is a citizen of a foreign state and the Defendants are citizens of Florida and Delaware,  and the matter in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.

13.     This Court has personal jurisdiction over the Defendants in that they are located and conduct business in the State of Florida and the Southern District of Florida.

14.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(1) and 1400(a) because the Defendants are subject to personal jurisdiction in this district and therefore "reside" in this district, as that term is defined in 28 U.S.C. § 1391(c).  Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the claims asserted herein occurred in this district.

15.     All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived or otherwise executed.

## FACTUAL BACKGROUND

A.     *The Distinguishing Features of a Telenovela*

16.     A telenovela is a limited-run serial dramatic television program that traces its roots to Latin American, Portuguese and Spanish television.  The term, telenovela, combines the words *tele*, short for television, and *novela*, a Spanish word for novel.

17.     Often thought to be Spanish soap operas, telenovelas are in fact distinguishable

from soap operas because telenovelas have a finite ending and conclude after a defined run – generally within less than one (1) year, with an average of approximately one hundred twenty (120) episodes. Thus, while American soap operas, such as *General Hospital*, *The Guiding Light* and *All My Children*, are open-ended and written to continue indefinitely, the duration of a telenovela is predetermined, with the overall story-arc and conclusion known to the show's creators from its inception.[2]

18.     In that telenovelas are designed to reach an end by a defined period, the plot is more focused than soap operas and centers more closely upon the show's protagonist, as opposed to the introduction of new characters.  The telenovela's core plot typically focuses on what happens to the protagonist (who is typically female) during the story's comparatively short lifespan.

19.     Further, telenovelas are often used to transmit important or topical socio-cultural messages, which are incorporated into the storylines.

20.     Telenovelas are immensely popular not only among Spanish-speaking audiences throughout the United States, Latin America, Spain and Portugal, but they also have a wide following in, among other places, Russia, Eastern Europe, France, Greece, Italy, the Philippines, Israel, Malaysia, Singapore, Indonesia, China, and Japan.

**B.     *Maria Maria***

21.     *Maria Maria* is an original telenovela that was created in 1989 and had its broadcast television premiere on Marte TV in Venezuela in 1989-1990.

22.     *Maria Maria* consisted of one hundred ninety-eight (198) episodes and was written principally by Humberto "Kiko" Olivieri Michelena ("Olivieri") with some purported

---

[2] Further, unlike American soap operas, which attract day-time audiences, telenovelas typically air during prime-time viewing hours.

contribution or assistance from Hernan Perez Belisario ("Perez Belisario"), the latter who employed the pseudonym, Marian Lujan.

23.     *Maria Maria* is the story of two (2) women (Maria and Julia), who are forced into a car together that drives off a cliff, crashes and explodes.   Initially, only one (1) of the women (Julia) is found, while the other (Maria) is presumed dead. Julia is found horribly disfigured and near Maria's purse which contains Maria's photo identification.   Under the mistaken belief that Julia is Maria, doctors reconstruct Julia's face to look identical to Maria's photo identification. Given that Julia suffers amnesia as a result of the car crash, she is initially unaware that she was given the wrong identity.   Consequently, after the surgery Julia resumes her life as "Maria." Meanwhile, it is discovered that the real Maria also survived the car crash but is being held captive.   Julia, who now looks like Maria, eventually regains her memory, and Maria eventually escapes from captivity.   However, before these events occur, Julia – looking like and believing herself to be Maria – must learn to love the man who was in love with Maria prior to the accident (and who she previously thought caused her father's suicide).

24.     *Maria Maria* was immensely popular during its initial run in Venezuela, and has remained popular to this day in Venezuela (where it is presently being broadcast by LaTele), as well as other countries, by virtue of re-broadcasts (*e.g.*, repeats).

25.     *Maria Maria* has reached a wide audience and has been televised in, among other countries: Venezuela, the United States, Spain, Italy, Bolivia, Colombia, Costa Rica, the Dominican Republic, Ecuador, El Salvador, Guatemala, Honduras, Panama, Paraguay, Peru, and Puerto Rico.

**C.     *LaTele's Acquisition of All Rights and Interests in Maria Maria***

26.     At the time that they authored *Maria Maria*, Messrs. Olivieri and Perez Belisario

were employees of Marte TV.  Messrs. Olivieri and Perez Belisario created *Maria Maria* during the course, and in the scope, of their employment with Marte TV and, as such, Marte TV was the initial owner of *Maria Maria*, and the rendering of expression and elements therein.

27.      Nonetheless, in an abundance of caution, Marte TV entered into a series of written agreements with Messrs. Olivieri and Perez Belisario, in which both Mr. Olivieri and Mr. Perez Belisario respectively assigned the entirety of their respective intellectual property rights and interests in and to *Maria Maria*, and the rendering of expression and elements therein, to Marte TV.[3]

28.      Subsequently, Imagen Television, C.A. ("Imagen") purchased Inversiones Vistana 333, C.A., which owned one hundred percent of the shares of Marte TV.   Imagen thus became the parent corporation of Marte TV.  As such, Marte TV retained all of its intellectual property, including its catalogue of programming (which consisted of a number of successful telenovelas, including *Maria Maria*).

29.      Shortly after Marte TV became a subsidiary of Imagen, the company's name was officially changed from Marte CVT Producciones de Television, S.A. to LaTele Television C.A.[4]

30.      LaTele registered *Maria Maria* with the United States Copyright Act.  A copy of the certification of registration Pau 3-527-349, which bears an effective date of registration of November 9, 2010 is attached hereto as **Exhibit A**.[5]

---

[3] At the time of *Maria Maria*'s creation, Mr. Perez Belisario possessed an ownership interest in the parent company of Marte TV.

[4]   LaTele will file certified translated copies of the documents effectuating Marte TV's name change to LaTele forthwith.

[5]   *Maria Maria* was also registered for copyright protection in Venezuela.  The Venezuelan registration is dated December 30, 1991; filed under Nos. 789-790-741, Folios 1278-1279-1428; is owed by LaTele; and is cognizable and enforceable under the U.S. Copyright Act, as both Venezuela and the United States are member states to the Berne Convention for the Protection of Literary and Artistic Works.

31.     LaTele is the owner of all rights, title and interests in *Maria Maria*, and the rendering of expression and elements therein, and in and to the copyright and the registration thereof.

**D.     The Defendants' Infringement of Maria Maria**

32.     The Defendants engaged Mr. Olivieri, who has been listed and credited as the writer for *Maria Maria* for approximately three (3) decades,[6] to in effect rewrite *Maria Maria*. By engaging Mr. Olivieri, the Defendants gained access to and knowledge of *Maria Maria*, including elements that were not contained in the final version that was publicly broadcast.

33.     In writing *El Rostro* – which, notably, was the original working title of *Maria Maria* – Mr. Olivieri copied much, if not all, of *Maria Maria's* expression and protected elements, resulting in the telling of a virtually identical story.

34.     Consisting of approximately one hundred and seventy-eight (178) chapters, *El Rostro* tells the story of two (2) women (Mariana and Analia), who are forced into a car together that drives off a cliff, crashes and explodes.  Initially, only one (1) of the women (Mariana) is found, while the other (Analia) is presumed dead.  Mariana is found horribly disfigured and near Analia's purse which contains Analia's photo identification.   Under the mistaken belief that Mariana is Analia, doctors reconstruct Mariana's face to look identical to Analia's photo identification.   Given that Mariana suffers amnesia as a result of the car crash, she is initially unaware that she was given the wrong identity.  Consequently, after the surgery Mariana resumes her life as "Analia."  Meanwhile, it is discovered that the real Analia also survived the car crash but is being held captive.  Mariana, who now looks like Analia, eventually regains her memory, and Analia eventually escapes from captivity.  However, before these events occur, Mariana –

---

[6] *See* www.imdb.com (listing Mr. Olivieri as the author of both *Maria Maria* and *El Rostro*, as well as eleven other telenovelas).

looking like and believing herself to be Analia – falls back in love with her husband, who had previously cheated on her.

35.     A side-by-side comparison reveals that *Maria Maria* and *El Rostro* are two (2) versions of the same story, and articulate the theme of personal transformation though identity substitution in a substantially similar manner. By way of example, *Maria Maria* and *El Rostro* share not only the same author, but the same core plot[7] and the same exposition, conflict, climax and closure:

| *Maria Maria's Plot* | *El Rostro's Plot* |
|---|---|
| Exposition: A devoted mother, loving daughter and loyal friend with an unfaithful husband (Julia) is discovered burned beyond facial recognition after her car crashed off a cliff and exploded in flames, but only the identification documents of the other woman (Maria) in the vehicle are recovered. | Exposition: A devoted mother, loving daughter and loyal friend with an unfaithful husband (Mariana) is discovered burned beyond facial recognition after her car crashed off a cliff and exploded in flames, but only the identification documents of the other woman (Analia) in the vehicle are recovered. |
| Conflict: Julia has amnesia and now has Maria's face, as plastic surgeons had based their facial reconstruction efforts on the identification documents found in Maria's nearby purse. When Julia reencounters her real family and best friend, they all inexplicably sense a strong connection. | Conflict: Mariana has amnesia and now has Analia's face, as plastic surgeons had based their facial reconstruction efforts on the identification documents found in Analia's nearby purse. When Mariana reencounters her real family and best friend, they all inexplicably sense a strong connection. |
| Climax:     Presumed dead, Maria escapes captivity and reappears, resulting in two (2) different women with the same face and the same name. Julia's family and her best friend learn that Julia now bears Maria's face, and help her recover her memory. | Climax:     Presumed dead, Analia escapes captivity and reappears, resulting in two (2) different women with the same face and the same name. Mariana's family and her best friend learn that Mariana now bears Analia's face, and help her recover her memory. |
| Resolution: Julia reunites with her family and friends and gets married again (to whom a man | Resolution: Mariana reunites with her family and friends, and falls back in love with her |

---

[7]  A "plot" refers to what happens to the story's protagonist and to the four (4) elements  that articulate a story: the exposition (which introduces the protagonist and her circumstances); the conflict (which introduces the challenges that the protagonist faces); the climax (which signals the beginning of the end of the conflict and its potential resolution); and the resolution (in which the conflict is resolved).

who she used to resent).                    husband (who she used to resent).

36.     In addition to telling the same story, the *Maria Maria* and *El Rostro* unfold in the

same order and contain eight (8) narrative modules that organize the sequence of events:

    a.  *Infidelity*: The protagonist (Julia / Mariana) learns that her husband is having an affair.

    b.  *The Car Drive*: Determined to save her marriage, the protagonist (Julia / Mariana) confronts the other woman or, in the case of *El Rostro*, the mistress's partner-in-crime, going for a drive to have the conversation about her husband's affair.

    c.  *The Resulting Crash and Mistaken Identity*: Upset by the conversation and circumstances, the protagonist (Julia / Mariana) loses control of her car, which crashes off a cliff and bursts into an inferno of flames.  The protagonist (Julia / Mariana) is found alive, but badly burned and disfigured, and next to the other passenger's (Maria / Analia) identification documents and charred bones.  The other passenger's (Maria / Analia) family bury her remains in a funeral ceremony.

    d.  *Plastic Surgery*: The protagonist's (Julia / Mariana) face is reconstructed as if she were the other passenger (Maria / Analia), based on the identification documents found at the scene of the accident.  The protagonist (Julia / Mariana) survives the crash with amnesia

    e.  *The Amnesic Protagonist*: The protagonist (Julia / Mariana) begins to live under a different identity and assumes that she is the other passenger (Maria / Analia).  The protagonist (Julia / Mariana) senses a strong, inexplicable, connection to her actual family and loved ones, despite her assumption of the new (and incorrect) identity.

    f.  *The Protagonist's Best Friend, and Later Bastard Brother, Realize Her True Identity*: The protagonist's (Julia / Mariana) friend recognizes an identifying scar – one that was created between the friends during their childhood to make them "blood sisters."  The friend then begins to recognize other characteristics, calling into question the protagonist's (Julia / Mariana) identity as the other passenger (Maria / Analia).  Finally, the protagonist (Julia / Mariana) and her bastard brother  realize that the protagonist has assumed the incorrect identity of the other woman (Maria / Analia).

    g.  *The Reappearance of the Captive Woman*: The other passenger (Maria / Analia) frees herself from captivity and reappears.

    h.  *The Protagonist Is Reunited with Her Loved Ones*.  The protagonist (Julia /

Mariana) eventually recovers her memory and is reunited with her family and loved ones.

37.    *El Rostro* also consists of near-identical characters to *Maria Maria*.  By way of example, in each story, the protagonist (Julia / Mariana) (a) is a kind, family-oriented woman, who had an affluent urban upbringing, (b) is married to an unfaithful husband, (c) has one (1) child, (d) has an illegitimate brother raised in poverty, and (e) has a best friend since childhood with whom she became "blood sisters" with an identifying scar.

38.    In addition to being carbon copies of each other, the central characters in both *El Rostro* and *Maria Maria* possess remarkably similar relationships with the other characters, including, for example, the poor bastard brother abandoned by their rich father (William in *Maria Maria* and Miguel in *El Rostro*) and the blood sister (Leonor in *Maria Maria* and Isabel in *El Rostro*).

39.    *El Rostro* replicates every key aspect of *Maria Maria*. In addition to containing the same core plot, the same sequence of events, and the same characters, *Maria Maria* and *El Rostro* also possess similar dialogue, paces, mood and tone.[8]

40.    While *El Rostro* contains some elements and antagonists not found in *Maria Maria*, these differences are best described as originating from the "outside-in."  They are cosmetic as opposed to qualitative differences, specifically aimed at masking that *El Rostro* is, in fact, simply *Maria Maria* updated and repackaged in a different setting (*Maria Maria* takes places in Caracas, Venezuela in the 1980's, while *El Rostro* purports to take place in Los

---

[8] Each story unfolds at relatively the same pace, with *Maria Maria* consisting of a total of one hundred ninety-eight (198) episodes, while *El Rostro* consists of one hundred seventy-eight (178) episodes.

Angeles, California in the first decade of the twenty-first century).[9]

41.     In sum, *El Rostro* articulates a substantially similar story to *Maria Maria*, copying (a) the same core plot, including the same exposition, conflict, climax and closure (b) a near-identical structure and sequencing of events, and (c) similar characters and character development.   Consequently, the total concept and feel of the two (2) telenovelas are, if not identical, substantially similar in all material respects.

42.     *El Rostro* was produced by Telemundo Miami in Hialeah, Florida and at the behest, and with the permission of, Telemundo.  Telemundo Miami's production of *El Rostro* was part of Telemundo's then-initiative to increase the in-house production of its content.

43.     *El Rostro* premiered on Telemundo TV during primetime on or about October 20, 2008 – though it was not necessarily evident from its inception that *El Rostro* was going to be a carbon copy of *Maria Maria*.[10]

44.     The *El Rostro* premiere reached over one million viewers in the prized 18 to 49 demographic, and was Telemundo and Telemundo Network's highest-rated launch since 2006.

45.     *El Rostro* was a strong ratings performer – outperforming Telemundo TV's other primetime programming[11]-- and proved to be immensely profitable for Telemundo.

46.     Adding to *El Rostro*'s profitability is Telemundo's decision to exploit the

---

[9]  By way of example, while *El Rostro* is purportedly set in Los Angeles, it contains all of the hallmarks of a Latin American urban love story, substituting Los Angeles Latino ghettos for the portions of *Maria Maria* that played out in Caracas' shantytown.

[10]  The parties have executed several tolling agreements, five (5) in total, in connection with the claims brought herein.  These agreements tolled and suspended the time limit of any claim or defense, as if the passage of time had not occurred.

[11]  *El Rostro*'s tremendous popularity captured the eye of advertisers.  By way of example, two (2) days after *El Rostro's* premiere, Telemundo announced a groundbreaking agreement with Chevrolet for the placement of the Chevy Malibu in *El Rostro*. Chevrolet was integrated into the show's opening credits, and the Chevy Malibu appeared throughout the course of the telenovela and prominently on Telemundo's website.   In announcing the Chevrolet deal, Telemundo Chief Operating Officer stated (in Spanish): "For the first time on television in Spanish, we are integrating a brand and product in our initial credits.  Each night, five nights a week during prime time, the Chevy Malibu will have a strong presence in the Telemundo soap opera of El Rostro [ ] at 9:00 p.m."

program internationally.  Specifically, at Telemundo's behest, the show has been licensed and distributed by Telemundo Internacional to what is believed to be in excess of forty (40) countries, including without limitation: Colombia, Ecuador, Guatemala, Mexico, Panama, Paraguay, Peru, Venezuela, Albania, Armenia, Bosnia and Herzegovina, Bulgaria, Croatia, Czech Republic, Georgia, Hungary, Lithuania, Macedonia, Moldavia, Montenegro, Poland, Romania, Serbia, Slovakia, Turkey, Iran and Vietnam.

47.    *El Rostro* has been a tremendous commercial success in many of these countries (and thus immensely profitable for Telemundo Internacional), particularly in Guatemala, Colombia, Costa Rica and Ecuador, where it ranks among these countries' most watched programs.

48.    Telemundo Internacional has distributed *El Rostro* to foreign markets on a rolling basis, entering into a series of separate agreements with different entities throughout 2009, 2010, 2011 and, on information and belief, 2012. Each distribution agreement that Telemundo Internacional has entered into has resulted in a separate, independent injury to LaTele.

49.    The damages suffered by LaTele in connection with Telemundo Internacional's ongoing foreign distribution of *El Rostro* occurred throughout 2009, 2010, 2011 and continue to the present day.

50.    The striking and substantial similarities between *Maria Maria* and *El Rostro* has not been lost on the viewers.  Indeed, those who have watched both shows have described *El Rostro* as a "remake" of *Maria Maria*.  Similarly, various Internet websites that discuss the television industry have described *El Rostro* as either a remake, a re-telling or a new version of *Maria Maria*.[12]

---

[12] *See, e.g.,* www.seriesnow.com (describing El Rostro as a "[r]emake of the Venezuelan telenovela, 'Maria Maria'"); http://Telemundo33.wordpress.com (*El Rostro* is a new version of *Maria Maria*).

<u>**COUNT I**</u>
**(Copyright Infringement of *Maria Maria* – Copyright Act § 101, *et seq.*)**
**(Against the Defendants)**

51.     LaTele re-alleges and reincorporates paragraphs 1 through 50.

52.     *Maria Maria*, and the rendering of expression and elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*

53.     As the copyright owner of *Maria Maria* and under 17 U.S.C. §§ 106 and 501, LaTele is a legal or beneficial owner of the exclusive rights to reproduce *Maria Maria* in copies, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work, and display the copyrighted work publicly.

54.     Due to the fact that *El Rostro* was written by the same author of *Maria Maria*, Mr. Olivieri, the Defendants gained a high degree of access to LaTele's copyrighted work and expression.

55.     As a result, *El Rostro* in fact employs the same plot, themes, mood, setting, pace, characters, sequence of events and other concrete elements making up *Maria Maria* and therefore is strikingly similar to *Maria Maria*.

56.     In connection with the development of *El Rostro*, the Defendants have copied and intend to continue copying *Maria Maria*, and the expression contained therein, without LaTele's license, authority or consent.

57.     The Defendants produced, broadcast, distributed, disseminated and displayed the infringing *El Rostro* in the United States and worldwide.

58.     By engaging in the conduct described above, the Defendants have committed and continue to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

59.     The Defendants' copying of *Maria Maria* without LaTele's license, authority or

consent is a willful and conscious disregard of LaTele's rights under the Copyright Act.

60.     As a direct and proximate result of the Defendants' infringement of LaTele's copyright interests in *Maria Maria*, LaTele has been damaged and continues to be damaged in an amount to be determined at trial.

61.     As a direct and proximate result of the Defendants' infringement of LaTele's copyright interest in *Maria Maria*, the Defendants have made or will make profits attributable to their infringement. The amount of these profits will be determined at the time of trial.

62.     LaTele has been and will continue to be damaged as a direct and proximate result of the Defendants' continuing acts of infringement and threatened infringement, including but not limited to lost revenues and profits, damaged relations with existing and prospective business partners, and a continuing loss of value of its copyright interests in and to *Maria Maria*. The damages that LaTele has suffered and continues to suffer from this infringement are irreparable. LaTele has no adequate remedy at law, and such conduct will continue to cause irreparable harm unless restrained by this Court by the issuance of an injunction.

63.     Unless enjoined by this Court, the Defendants' conduct and continued infringement of LaTele's copyright interests will cause further irreparable injury. LaTele therefore requests that, after trial, this Court issue a permanent injunction, restraining and enjoining the Defendants and their agents, employees, attorneys, representatives and anyone acting at their direction or behalf from copying, reproducing, distributing or displaying, without the express or implied consent of LaTele, the copyrightable expression in *Maria Maria*.

64.     To prevent ongoing and future infringement of LaTele's copyrightable interests and the irreparable injury resulting therefrom, LaTele requests that this Court order the Defendants to surrender all copies made in violation of LaTele's copyright interests, as well as

any film negatives, tapes or other articles by which such copies may be produced, and the destruction or reasonable disposition of all such items as part of its final judgment in this action.

## COUNT II
### (Contributory Copyright Infringement – Copyright Act § 101, *et seq.*)
### (Against Telemundo and Telemundo Internacional, LLC)

65.     LaTele re-alleges and reincorporates paragraphs 1 through 50.

66.     *Maria Maria*, and the rendering of expression and elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq.*

67.     As the copyright owner of *Maria Maria* and under 17 U.S.C. §§ 106 and 501, LaTele is a legal or beneficial owner of the exclusive rights to reproduce *Maria Maria* in copies, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work, and display the copyrighted work publicly.

68.     Due to the fact that *El Rostro* was written by the same author of *Maria Maria*, Mr. Olivieri, Telemundo Network and Telemundo Miami gained a high degree of access to LaTele's copyrighted work and expression.

69.     As a result, *El Rostro* in fact employs the same plot, themes, mood, setting, pace, characters, sequence of events and other concrete elements making up *Maria Maria* and therefore is strikingly similar to *Maria Maria*.

70.     In connection with the development of *El Rostro*, Telemundo Network and Telemundo Miami have copied and intend to continue copying *Maria Maria*, and the expression contained therein, without LaTele's license, authority or consent.

71.     Telemundo Network and Telemundo Miami produced, broadcast, disseminated, distributed and displayed the infringing *El Rostro* in the United States and worldwide.

72.     By engaging in the conduct described above, Telemundo Network and

Telemundo Miami have committed and continue to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

73.     Telemundo Network and Telemundo Miami's copying of *Maria Maria* without LaTele's license, authority or consent is a willful and conscious disregard of LaTele's rights under the Copyright Act.

74.     Telemundo and Telemundo Internacional had knowledge of Telemundo Network and Telemundo Miami's direct infringement of LaTele's copyrighted works, *Maria Maria* based on their engagement and/or employment of Mr. Olivieri, who served as their agent and whose knowledge is thus attributable to Telemundo and Telemundo Internacional.

75.     Moreover, Telemundo had knowledge of the infringement because it operates Telemundo Network (a direct infringer), and the two entities additionally share the same two (2) managing members.

76.     As the distribution arm of Telemundo and Telemundo Network, Telemundo Internacional – as is customary in the entertainment industry – was likely required to represent and warrant to all third-party entities that purchased or licensed *El Rostro* that Telemundo and Telemundo Network owned all of the intellectual property rights in and to *El Rostro* and that *El Rostro* did not infringe upon the rights of others.   LaTele is informed and believes, and on this basis alleges, that Telemundo Internacional conducted due diligence before making these contractual representations and warranties and, thus, had knowledge of Telemundo Network and Telemundo Miami's infringement of *Maria Maria*.

77.     Additionally, Telemundo Network is the managing member of Telemundo Internacional.  As a result, Telemundo Internacional had knowledge of Telemundo Network's decision to infringe on *Maria Maria* and to create, develop, produce and distribute the infringing

work, *El Rostro*.

78.     Telemundo intentionally induced, encouraged or materially contributed to the direct infringement by overseeing, supervising, controlling, approving and/or encouraging Telemundo Network and Telemundo Miami's creation, development, production, broadcast and distribution of *El Rostro*.  Telemundo had the final authority to green-light the production and development of *El Rostro*.  Such acts  demonstrate Telemundo's substantial and continuing connection with Telemundo Network and Telemundo Miami's direct infringement of *Maria Maria*.

79.     Telemundo Internacional intentionally induced, encouraged or materially contributed to the direct infringement by distributing, disseminating, selling and licensing the infringing *El Rostro* worldwide on Telemundo affiliates.  Such acts demonstrate Telemundo Internacional's substantial and continuing connection  with Telemundo Network and Telemundo Miami's direct infringement of *Maria Maria*, from their creation and development of *El Rostro* to Telemundo Internacional's sale, licensing and distribution of *El Rostro* worldwide.

80.     As a direct and proximate result of Telemundo and Telemundo Internacional's contributory infringement of LaTele's copyright interests in *Maria Maria*, LaTele has been damaged and continues to be damaged in an amount to be determined at trial.

81.     As a direct and proximate result of the Telemundo and Telemundo Internacional's contributory infringement of LaTele's copyright interest in *Maria Maria*, Telemundo and Telemundo Internacional have made or will make profits attributable to their infringement.  The amount of these profits will be determined at the time of trial.

82.     LaTele has been and will continue to be damaged as a direct and proximate result of Telemundo and Telemundo Internacional's continuing acts of contributory infringement and

threatened infringement, including but not limited to lost revenues and profits, damaged relations with existing and prospective business partners, and continuing loss of value of its copyright interests in *Maria Maria*.

**COUNT III**
**(Vicarious Copyright Infringement – Copyright Act § 101, *et seq.*)**
**(Against Telemundo and Telemundo Internacional)**

83.     LaTele re-alleges and reincorporates paragraphs 1 through 50.

84.     *Maria Maria*, and the rendering of ideas and elements therein, constitutes copyrightable expression protected by the Copyright Act, 17 U.S.C. § 101, *et seq*.

85.     As the copyright owner of *Maria Maria* and under 17 U.S.C. §§ 106 and 501, LaTele is a legal or beneficial owner of the exclusive rights to reproduce *Maria Maria* in copies, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work, and display the copyrighted work publicly.

86.     Due to the fact that *El Rostro* was written by the same author of *Maria Maria*, Mr. Olivieri, Telemundo Network and Telemundo Miami gained a high degree of access to LaTele's copyrighted work and expression.

87.     As a result, *El Rostro* in fact employs the same plot, themes, mood, setting, pace, characters, sequence of events and other concrete elements making up *Maria Maria* and therefore is strikingly similar to *Maria Maria*.

88.     In connection with the development of *El Rostro*, Telemundo Network and Telemundo Miami have copied and intend to continue copying *Maria Maria*, and the expression contained therein, without LaTele's license, authority or consent.

89.     Telemundo Network and Telemundo Miami produced, broadcast, distributed, disseminated and displayed the infringing *El Rostro* in the United States and worldwide.

90.     By engaging in the conduct described above, Telemundo Network and Telemundo Miami have committed and continue to commit copyright infringement in violation of the Copyright Act § 101, *et seq.*

91.     Telemundo Network and Telemundo Miami's copying of *Maria Maria* without LaTele's license, authority or consent is a willful and conscious disregard of LaTele's rights under the Copyright Act.

92.     Telemundo had the right or ability to supervise Telemundo Network and Telemundo Miami's direct infringement of *Maria Maria* because it operates Telemundo Network and ultimately oversees, approves and/or controls the creation, production and content of Telemundo TV's programming, including without limitation Telemundo Network and Telemundo Miami's decision to create, develop and produce *El Rostro*.  Telemundo had the final authority to green-light the production and development of *El Rostro*.  Such acts demonstrate Telemundo's substantial and continuing connection with Telemundo Network and Telemundo Miami's direct infringement of *Maria Maria*.

93.     Telemundo Internacional had the right or ability to supervise Telemundo Network and Telemundo Miami's direct infringement of *Maria Maria* because it marketed, distributed, disseminated, licensed, and sold *El Rostro* to numerous international affiliates.

94.     As a result of their abilities to supervise Telemundo Network and Telemundo Miami, Telemundo and Telemundo Internacional could stop or limit Telemundo Network and Telemundo Miami's direct infringement of *Maria Maria* but did not take any action to do so.

95.     Telemundo and Telemundo Internacional each had direct financial interests in Telemundo Network and Telemundo Miami's production, distribution and broadcast of *El Rostro* and thus profited from their direct infringement of *Maria Maria*.

96.     As a direct and proximate result of Telemundo and Telemundo Internacional's vicarious infringement of LaTele's copyright interests in *Maria Maria*, LaTele has been damaged and continues to be damaged in an amount to be determined at trial.

97.     As a direct and proximate result of the Telemundo and Telemundo Internacional's vicarious infringement of LaTele's copyright interest in *Maria Maria*, Telemundo and Telemundo Internacional have made or will make profits attributable to their infringement.  The amount of these profits will be determined at the time of trial.

98.     LaTele has been and will continue to be damaged as a direct and proximate result of Telemundo and Telemundo Internacional's continuing acts of vicarious infringement and threatened infringement, including but not limited to lost revenues and profits, damaged relations with existing and prospective business partners, and continuing loss of value of its copyright interests in *Maria Maria*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, LaTele respectfully requests that this Honorable enter the following relief:

1.      That the Court enter judgment in favor of LaTele and against the Defendants.

2.      That the Court enter a declaratory judgment that the Defendants have committed copyright infringement in connection with their creation, production, exhibition and dissemination of *El Rostro*;

3.      That the Defendants, their officers, agents, servants, employees and all persons in active concert or participation with them, be preliminarily and permanently restrained and enjoined from copying, reproducing, exhibiting, distributing, disseminating or displaying *El Rostro*;

4.     That the Defendants be ordered to recall and surrender all copies of *El Rostro* made in violation of LaTele's copyright interests, including but not limited to film negatives, tapes or other articles by which such copies may be produced, and order the destruction or reasonable disposition of all such items;

5.     That LaTele recover actual and compensatory damages for the Defendants' wrongdoing in an amount to be established at trial, together with pre-judgment and post-judgment interest thereon at the maximum legal rate;

6.     That LaTele, to the extent permitted under the Copyright Act, 17 U.S.C. §§ 504 and 505, recover statutory damages as well as its attorneys' fees and the costs relating to any independent act of infringement committed by any and all of the Defendants that occurred after LaTele's registration of its copyright with the United States Copyright Office.

7.     That LaTele recover its proven damages in accordance with the Copyright Act, 17 U.S.C. § 504 and other applicable law; and

8.     Such other relief as this Court may deem just and proper.

### **JURY TRIAL DEMAND**

LaTele respectfully demands a trial by jury on all claims and issues so triable.

.

Dated:  July 10, 2012
       Miami, Florida

Respectfully submitted,

**STROOCK & STROOCK & LAVAN LLP**
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone:  (305) 358-9900
Facsimile:   (305) 416-2888
jsammataro@stroock.com
ccaprio@stroock.com
ltaormina@stroock.com

By: _____
James G. Sammataro, Esq.
Florida Bar Number: 0520292
Courtney Caprio, Esq.
Florida Bar No. 0933961
Lisa Taormina, Esq.
Florida Bar Number: 070848