UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-22539-CIV- GOODMAN

[Consent Case]

LATELE TELEVISION, C.A.,

    Plaintiff,

v.

TELEMUNDO COMMUNICATIONS
GROUP, LLC, et al.,

    Defendants.
_____/

## ORDER COMPELLING PRODUCTION OF THE REMAINING PORTIONS OF THE SOMOS PRODUCTION

This Cause is before the Undersigned following *in camera* review of certain documents that Plaintiff ("Latele") insisted be sequestered from the so-called Somos Production because, in Latele's view, these documents are protected by the attorney-client privilege. For the reasons outlined below, it is **ORDERED** and **ADJUDGED** that Defendants ("Telemundo") may review the still-sequestered documents and that Latele must produce English translations of these documents to Telemundo within three business days of the date of this Order.

I.  **Procedural Background**

On January 31, 2014, Telemundo issued subpoenas to Somos Distribution, LLC ("Somos"), Ivan M. Morales, General Counsel and Corporate Secretary of Somos, and Luis Villanueva, President and CEO of Somos (together, the "Somos Subpoenas"). [ECF No. 300]. The subpoenas seek identical categories of information, all related to *Maria Maria*, the telenovela at issue in this case. [*Id.* at 14, 18, 22]. Specifically, the subpoenas seek documents reflecting business transactions involving *Maria Maria*, including documents ranging from distribution agreements to business dealings related to the creation of *Maria Maria*. [*Id.*].

Somos is a non-party to this litigation. Somos and Latele executed a distribution agreement in December 2010 that gives Somos distribution rights over certain media owned by Latele. [ECF No. 308-1]. Neither Latele, Latele's U.S. counterpart (Latele Productions, Inc.), nor Fernando Fraiz ("Fraiz"), the principal owner of Latele, have any ownership stake in Somos at all. [*Id.*]. Somos is a wholly separate entity whose only connections to Latele stem from the referenced distribution agreement. [*Id.*].

Somos, by and through its attorneys, produced documents responsive to the Somos Subpoenas, on February 24, 2014 (the "Somos Production"). [ECF No. 166, p. 10]. During the course of its review of the Somos Production, Telemundo uncovered emails between Latele's counsel and Fraiz regarding preparation of certain discovery responses. [ECF No. 166, p. 11].

In an abundance of caution, Telemundo then sequestered the entire Somos Production, in case Latele would claim privilege over portions of it, even though, in Telemundo's view, "any claimed privilege was likely waived," because "these email exchanges were disclosed to and produced by a nonparty, Somos." [*Id.*]. On March 5, 2014, Latele designated certain portions of the Somos Production that it deemed safe for Telemundo's review. Then, by letter dated March 6, 2014, Latele asserted attorney-client privilege over certain portions of the Somos Production and insisted that Telemundo continue to sequester those documents (the "Sequestered Somos Production"), on the theory that any disclosure of privileged documents was inadvertent, and therefore, pursuant to Federal Rule of Evidence 502, the disclosure did not operate as a waiver of applicable privilege. The Sequestered Somos Production was submitted to the Undersigned for *in camera* review. [ECF No. 296]. This Order follows.

## II.     The Documents at Issue

The Sequestered Somos Production consists of 132 pages of emails, the bulk of which are originally in Spanish. Latele describes the documents this way:

> They all are either communications just between us and our client, LATELE, and its President, Fernando Fraiz, or, communications in which we were "cc'd" and the only other parties to the communications were either employees of LATELE, or its corporate counsel, or German Perez Nahim, after he became part of our "team" (as previously explained to you) as a non-testifying expert and consultant. The documents over which we are asserting privilege are email communications occurring on January 16, 2014 or later, clearly well within the time period that this case was already being litigated.

[ECF No. 215-6, p. 1].

The most salient feature of the documents for purposes of this Order, however, is that they were **in the possession of Somos**. The Sequestered Somos Production is essentially just a few email strings and attachments that were duplicatively produced by Somos. [ECF No. 215-6, p. 2]. The emails in question include what would otherwise be attorney-client privileged communications between Latele, Fraiz, and Latele's counsel, but these communications were then forwarded to Somos. For other documents, some recipients, including Latele's counsel and Latele personnel (including Fraiz), hit "reply all" to these forwarded emails as the email conversations continued. At some point, on January 17, 2014, a Somos receipient hit "reply all" on this email traffic and, in Latele's words, "indicated that he should not have been included in the distribution of the document, and asked to be removed from the "cc" list." [ECF No. 215-6, p. 2].

### III. Latele's Arguments Against Disclosure

In its March 6, 2014 letter to counsel for Telemundo, Latele's counsel stated, "we hereby formally notice you that you are in possession of documents protected by the attorney-client privilege and were [sic] inadvertently disclosed by a third party pursuant to a subpoena." At a July 11, 2014 discovery hearing, Latele described the Sequestered Somos Production documents as privileged correspondence between Latele and its counsel in this litigation. [ECF No. 283, p. 6]

At some point, Latele seemed to argue that attorney-client-privileged documents sent to Somos did not lose their privileged status based on Somos's status as Latele's agent. [ECF No. 249, p. 3, n. 2]. However, Latele has abandoned this theory. At an August 18, 2014 hearing, Latele's counsel confirmed that Latele is not arguing that Fraiz is a principal of Somos, or that Somos's status as a distribution agent for Latele somehow brings Somos within the attorney-client privilege umbrella that applies to communications between Latele and its counsel. Instead, Latele exclusively relies on Federal Rule of Evidence 502(b) to argue that the Sequestered Somos Production was *inadvertently* disclosed to Telemundo, and that that disclosure did not operate as a waiver of otherwise applicable attorney-client privilege. Latele relies solely on the attorney-client privilege and has not argued that any portion of the Sequestered Somos Production is protected work product.

## IV. Legal Framework and Analysis

### a. Federal Law Governs Application of the Attorney-Client Privilege Here.

Latele has brought three counts in its Complaint in this case, each a count alleging Telemundo violated the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court's subject matter jurisdiction is grounded in 28 U.S.C. § 1331, as the issue of whether the Copyright Act was violated here is a federal question. As such, federal law regarding application of the attorney-client privilege governs this case. Fed. R. Evid. 501; *see also Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) ("We therefore hold that the federal

law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question . . .").

### b. Latele, as the Proponent of the Privilege, Bears the Burden of Showing its Applicability to the Sequestered Somos Production.

The proponent of the privilege has the burden of proving its applicability. *Hickman v. Taylor*, 329 U.S. 495, 510-12 (1947); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013); *United States v. Sigman*, 11-80155-CR, 2013 WL 5890714, *4 (S.D. Fla. Nov. 4, 2013) (internal citations omitted). Similarly, a party invoking work product protection must specifically raise that argument and demonstrate that it applies. *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 698 (N.D. Ga. 2007) (internal quotation omitted). "The party asserting the attorney-client privilege or the work product doctrine bears the burden to provide a factual basis for its assertions." *Id.*

Here, as referenced above, Latele argues only that the Sequestered Somos Production should be protected from production because it constitutes attorney-client privileged communications that were inadvertently disclosed to a third party, either Somos or Telemundo. Latele has not argued that any other exception to waiver of the attorney-client privilege might apply here, or that the communications also warrant

protection as attorney work product. The Undersigned will not address arguments Latele has not raised.[1]

### c. Much of the Sequestered Somos Production is not Protected by the Attorney-Client Privilege.

Before determining whether there has been an inadvertent disclosure here that meets the requirements of Federal Rule of Evidence 502 ("FRE 502"), first "it must be determined if the documents in question are privileged." *Sigman*, 2013 WL 5890714, at *4 (citing *Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D.N.J. 2009)). Again, the burden on this issue is Latele's. *Id.* (internal citations omitted).

In order to meet its burden to show that the Sequestered Somos Production is protected by the attorney-client privilege, Latele must show *all* of the elements of the privilege:

(1) Where legal advice of any kind is sought;

(2) from a professional legal advisor in his capacity as such;

(3) the communications relating to that purpose;

(4) made in confidence;

(5) by the client;

---

[1] The analysis of whether documents are protected as privileged attorney-client communications differs from the analysis of whether documents are protected attorney work product. For example, the D.C. Circuit has concluded that "while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege." *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981).

7

(6) are at his instance permanently protected;

(7) from disclosure by himself or by the legal advisor;

(8) except the protection may be waived.

*Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005) (citing *Provenzano v. Singletary*, 3 F. Supp. 2d 1353, 1366 (M.D. Fla. 1997), *aff'd*, 148 F.3d 1327 (11th Cir. 1998)).

As referenced above, Latele has argued *only* that the Sequestered Somos Production is composed of attorney-client communications that were inadvertently disclosed. Latele *is not* arguing that Somos was somehow within the scope of the attorney-client privilege shared by Latele and its counsel. Here, a large portion of the Sequestered Somos Production actually included Somos in the "To" or "cc" fields of emails, as opposed to an email string between Latele and its counsel being forwarded on to Somos. In these cases, the communications are not made in confidence at all, and therefore are not protected by the attorney-client privilege. There can be no inadvertent disclosure of documents that are not privileged in the first place. So, those portions of the Sequestered Somos Production that directly include Somos in the "To" or "CC" fields are not privileged communications, and must be produced immediately.

In addition to these documents, there is a universe of emails that are only in the possession of Somos (and therefore part of the Somos Production) because they were forwarded to Somos, rather than being directly sent to Somos as a designated recipient.

8

These include emails between Fernando Fraiz or other representatives of Latele and Latele's counsel in this action, and generally relate to efforts to meet discovery obligations in this case. These communications likely *did* meet the requirements necessary to constitute attorney-client communications (at least before they were sent to Somos), and so an analysis of whether their disclosure was inadvertent within the meaning of FRE 502 necessarily follows.

### d. There was no Inadvertent Disclosure Here.

Federal Rule of Evidence 502, "Attorney-Client Privilege and Work Product; Limits on Waiver," contains an exception to waiver for inadvertent disclosure. According to the rule:

> **(b) Inadvertent Disclosure.** When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
> **(1)** the disclosure is inadvertent;
> **(2)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> **(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502.

There is no hard and fast test for analyzing inadvertent disclosure issues, but, the 11th Circuit found no error in a district court's adoption of the so-called totality-of-the-circumstances test, in which a reviewing court considers five factors: "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken

to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Koch Foods of Alabama, LLC v. Gen. Elec. Capital Corp.*, 303 F. App'x 841, 846 (11th Cir. 2008) (quoting *Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir. 1993)).  The Undersigned will evaluate Latele's claimed inadvertent disclosure with this totality of the circumstances test in mind.

As a preliminary matter, it must again be noted that Somos is not within the scope of the attorney-client privilege between Latele and its counsel.  As referenced above, Latele acknowledges this point.  So, by forwarding attorney-client privileged communications/emails to Somos, Latele waived any applicable attorney-client privilege. *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 697 (S.D. Fla. 2009) ("Finally, counsel's instructions were forwarded to various analysts and investment bankers who participated in the due diligence process, constituting a waiver of the privilege."); *see also In re Horowitz*, 482 F.2d 72, 81 (2d Cir.1973) ( "subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege"); *Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 298 (W.D. Pa. 2011) ("if an otherwise privileged communication is disclosed to a third party by the client, then the privilege has been waived").

As for the disclosure to Somos of emails that would otherwise be attorney-client privileged, Latele has failed to meet its burden to show the disclosure was inadvertent.[2] First, it does not appear that the emails were forwarded to Somos inadvertently at all. On January 16, 2014, Fraiz purposely forwarded an email chain between himself and Latele's counsel on to Somos. [ECF No. 296-3, p. 2, SOMOSS0001046]. In that forwarding email, Fraiz writes: "as I requested some time ago with cc to Mr. Piantini, I need the ORIGINAL information about Maria Maria . . . **attached is a copy of the email that said attorney sends because of an "alleged" breach on my part . . . ."** [*Id.*] (emphasis added). In another email, dated January 17, 2014, Fraiz forwards to Somos, without any explanation, an email from his counsel with the subject line "Discovery Failures," that outlines various issues with Latele's discovery responses as of that time. [ECF No. 296-3, p. 11, SOMOSS0001056].

On January 17, 2014, Somos sent an email asking to be removed from the email chain regarding discovery issues, and stated that it had "no interest in knowing about something that is not our concern." [ECF No. 296-3, p. 46, SOMOS0001074]. In

---

[2]  It should be noted here that nearly all, if not all, cases analyzing inadvertent disclosure in this Circuit deal with inadvertent disclosure via discovery in litigation. Latele is attempting use the doctrine to excuse either its disclosure of the Sequestered Somos Production to Somos, or, in turn, Somos's production of those documents to Telemundo. This is different than the common inadvertent disclosure case. *In re Se. Banking Corp. Sec. & Loan Loss Reserves Litig.*, 1996 WL 34491908 (S.D. Fla. July 8, 1996) ("a counsel's inadvertent disclosure of privileged documents during discovery is insufficient by itself to constitute a waiver of the privilege.") (internal citation omitted).

11

response, also on on January 17, 2014, Fraiz wrote, "I totally agree." [*Id.*]. However, this statement, which might on its face indicate some level of "inadvertence," is belied by the emails themselves. As noted, Fraiz, on at least two occasions, was actually the person that forwarded attorney-client privileged communications about these discovery issues to Somos. In addition, Fraiz and other Latele personnel participated in the email exchanges that followed, by virtue of each sender hitting "reply all" instead of specifically considering the substance of their email and its recipients. [*Id.* at 47-48]. This is completely at odds with the notion that the disclosure was inadvertent. It was not.

Second, neither Fraiz nor his counsel took reasonable steps to prevent the disclosure. Fraiz forwarded attorney-client communications to Somos purposely, CC-ing his counsel, and then, in follow-up, his counsel replied to all recipients with further information that, but for the inclusion of Somos, would have been attorney-client privileged. [*Id.*]. Latele personnel, including Fraiz, then responded via "reply all" as well. [*Id.*].

Finally, Latele did not take reasonable steps to rectify this disclosure. Latele was first put on notice that the disclosure to Somos occurred on January 17, 2014, contemporaneously with the email communications at issue, when Somos asked to be

removed from the email chain, in **two separate emails**,[3] and made it clear that it should not have been included in the first place. But Latele made no effort to cure the disclosure at that time, such as via a request that the communications be immediately destroyed, or at any time until March 6, 2014, when it first raised its inadvertent disclosure argument by letter to Telemundo. To prevail on its inadvertent disclosure claim, Latele needed to show *all* three elements outlined at FRE 502 - - but Latele has not met *any* of the elements.

It is possible that Latele is attempting to argue here that the inadvertent disclosure was not to Somos, but was instead from Somos to Telemundo, when Somos produced these materials in response to the Telemundo subpoena.[4] But this theory is not persuasive. Somos is simply not within the attorney-client privilege between Latele/Fraiz and their counsel. Somos is solely a distribution agent of certain Latele media. This agency is wholly unrelated to the subject of the email communications at

---

[3] [ECF No. 296-3, p. 46, SOMOS0001074]; [ECF No. 296-3, pp. 29, SOMOSS0002539].

[4] In fact, Latele appears to be purposely vague about whether the disclosure it deems inadvertent was from Latele to Somos, or from Somos to Telemundo. In its March 6, 2014 Letter to Telemundo claiming privilege, Latele notes both that the documents at issue constitute merely 100 pages of the 10,000 page Somos production *and* that Somos personnel asked to be removed from the email chain. These are two separate disclosures, yet Latele does not explain the difference in its letter at all.

issue - - namely, meeting discovery obligations in *this* litigation.[5] A third party outside the scope of the attorney-client privilege cannot inadvertently disclose documents within the privilege <u>because it should not have the documents to begin with</u>.

Moreover, even if Somos *was* within the attorney client privilege (which it is not), Latele has *still* failed to meet the elements of an inadvertent disclosure. To be sure, Somos produced these documents on purpose, not inadvertently. Somos included a detailed privilege log with its production, and in the near six months since then has not made any effort to add these additional documents to that privilege log. The other elements necessary for an FRE 502 showing are lacking here as well. Somos has not made any effort to either prevent the disclosure from occurring in the first place (again, all signs point to this being a purposeful disclosure by Somos), and, as referenced, Somos has still made no effort to rectify the issue, if there was one.

Finally, even assuming that the disclosure was inadvertent and Latele acted promptly to cure that disclosure, Latele still did not take adequate steps to safeguard its attorney-client information (the second element). Latele could have, for instance, instructed Somos's counsel that these materials were privileged and therefore could not be produced to Telemundo. Such instructions are commonplace in litigation. Latele did not do this or take any other step to reasonably protect its attorney-client privileged communications before they were produced by Somos.

---

[5] Latele has not argued that these materials were not responsive to the subpoena at issue at all. The Undersigned will not do so on its behalf.

There was no inadvertent disclosure here.[6]

V.   **Conclusion**

For the reasons outlined above, it is **ORDERED** and **ADJUDGED** that Defendants ("Telemundo") may review the Sequestered Somos Production and that Latele must produce English translations of these documents to Telemundo within three business days of the date of this Order.[7]

**DONE AND ORDERED** in Chambers, in Miami, Florida, September 10, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All Counsel of Record

---

[6]   This ruling does not eliminate the parties' dispute over documents possessed by Robert Allen Law. Telemundo contends that it is entitled to obtain purportedly privileged documents because of waiver, the crime-fraud exception, and the "at issue" doctrine. Latele will be submitting additional evidence concerning the crime-fraud theory and the parties will be submitting proposed orders.

[7]   As outlined in a prior Order [ECF No. 283, p. 6], Telemundo paid, or will pay, the cost of translating the Sequestered Somos Production, even though, to date, only Latele has access to those translations.