**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 12-22539-CIV- GOODMAN**

**[Consent Case]**

LATELE TELEVISION, C.A.,

Plaintiff,

v.

TELEMUNDO COMMUNICATIONS GROUP, LLC, et al.,

Defendants.
_____________________________________/

**ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR FOR FAILURE TO COMPLY WITH COURT ORDERS**

During many years between 1950 and 1988, CBS, NBC and others involved in the syndication industry broadcast the television game show "Truth or Consequences." The long-running show involved contestants selected from the studio audience who could either "tell the truth" (i.e., correctly answer a question) or be forced to pay the consequences (i.e., perform a stunt, usually wacky or zany). Several personalities hosted the show over the years, but Bob Barker (who also hosted "The Price is Right" from

1972 – 2007) had the longest reign, from 1957 to 1975. Mr. Barker's signoff ended with the phrase, "Hoping all your consequences are happy ones."[1]

In the instant copyright infringement case, Plaintiff, Latele Television, C.A. ("Plaintiff" or "Latele") did not tell the truth in discovery and it now must confront the consequences. Unlike the consequences envisioned in Mr. Barker's final comments to the game show television audience, however, the consequences here will not be happy for Plaintiff. On the other hand, the consequences will fall short of the full-fledged happiness urged by Defendants.[2]

Defendants want this Court to dismiss this copyright infringement action for lack of subject matter jurisdiction because of a purported lack of standing. Alternatively, they ask for the most extreme sanction available -- dismissal -- for failure to comply with Court orders concerning discovery (i.e., for not being truthful about documents and information which should have been produced in response to discovery requests and Court orders).

Focusing on the first argument for dismissal, the Court cannot now dismiss the case for lack of standing because Defendants' argument depends on contested facts. The

---

1 Archive of American Television, Truth or Consequences, http://www.emmytvlegends.org/interviews/shows/truth-or-consequences (last visited November 7, 2014).

2 The Defendants in this action include Telemundo Television Studios, LLC, Telemundo Studios Miami, LLC, Telemundo Network Group, LLC, Telemundo Internacional, LLC. Together, the Defendants are either referred to as "Defendants" or "Telemundo" in this Order.

Undersigned is not going to simply choose sides and pick Defendants' view of the facts and disregard Plaintiff's view in order to conclude that Plaintiff lacks standing and to then enter a related dismissal order.

Defendants contend that Plaintiff lacks standing to pursue this claim because it did not own the copyright at issue on the date it filed this lawsuit. [ECF No. 166, p. 1]. Specifically, they argue that Plaintiff assigned its rights -- first to its principal, Fernando Fraiz, and then to another entity he owns, Latele Productions, Inc. ("Latele U.S."). [*Id.* at pp. 3-5]. But there is a significant factual dispute as to the effectiveness of those assignments and, assuming that Plaintiff in fact assigned away the copyright at issue, whether those assignments were, for all practical purposes, rescinded (or undone or reversed or corrected -- all terms used by the parties, witnesses and counsel in evidentiary hearings and post-hearing memoranda). The Court does not believe it prudent to wade into this murky factual morass and unilaterally make credibility assessments. *Cf. Dominion Assets LLC v. Masimo Corp.,* No. 12-cv-02773-BLF, 2014 WL 2937058 (dismissing patent infringement lawsuit without prejudice because Plaintiff assigned its patent rights, did not prove mutual rescission of the assignment agreement and did not sufficiently explain why the assignee demanded material terms above and beyond mere rescission).[3]

---

[3] In contrast to *Dominion Assets,* all the parties involved in the assignments here contend that the assignments are not valid, were not intended to give up the copyright at issue and were in any event later corrected by another agreement.

Because the Court cannot simply dismiss the case on the subject matter argument, the only remaining issue (and it is a significant one, to be sure) is the argument for dismissal triggered by substantial discovery violations. [ECF No. 166, p. 1].

Based on the record evidence presented, the Undersigned is not going to dismiss the case (or enter a default against Plaintiff) for discovery violations either. However, because Plaintiff failed to produce relevant documents responsive to discovery requests, provided an incorrect or significantly misleading interrogatory answer, submitted a false or substantially incorrect declaration, provided incorrect or misleading deposition testimony and never timely advised its own trial counsel about significant transactions which might affect its standing to prosecute this case, the Court will be generating consequences -- relief, albeit short of dismissal or default, to Defendants.

Specifically, the consequences are designed to address the prejudice generated by Plaintiff's discovery shortcomings. Therefore, this case is being taken off of the trial calendar in order to give Defendants the opportunity to take additional discovery concerning certain documents which Plaintiff failed to timely produce. Because Plaintiff generated the need to obtain more discovery, it is only the Defendants who are being permitted to pursue additional discovery after expiration of the discovery deadline. Plaintiff will be required to pay the attendance fees for court reporters and videographers used at any new depositions scheduled by Defendants and it will need

to pay the travel costs for one defense attorney if any of the depositions are taken out of town. Plaintiff will need to pay these expenses within 30 days of receiving an invoice from Defendants. In addition, the Court is awarding Defendants attorney's fees in connection with the instant motion to dismiss. [ECF No. 166].

Finally, if the additional discovery (or other evidence obtained by Defendants) establishes that Plaintiff fraudulently manufactured and post-dated a critical document (the so-called "Addendum") in order to avoid the dismissal Defendants seek in their motion for lack of standing, then the Court will entertain another dismissal motion for fraud on the court/intentional bad faith discovery abuse. Likewise, if the Undersigned concludes that Plaintiff destroyed relevant evidence after a duty to preserve evidence was created, then the Court will also consider another defense-filed dismissal motion.[4]

## I. Factual Background Concerning Discovery

In its Complaint, Latele alleges different types of copyright infringement by Defendants of the popular *Maria Maria* telenovela, a Spanish-language soap opera. In particular, the works at issue are 198 episodes of television programming allegedly owned by Latele, originally airing in 1989, and 178 episodes of television programming

---

[4] Based on events occurring after the filing of its dismissal motion, Defendants are also seeking [ECF No. 358] an order compelling Plaintiff to hire an independent forensic computer expert to attempt to recover metadata and other documents from computers and other electronic media used by Plaintiff and its agents, including attorneys, in April 2012. That request is scheduled for a discovery hearing on November 21, 2014. The details and significance of the electronically stored information at issue in Defendants' request will be outlined later in this Order.

allegedly aired by Defendants. *El Rostro de Analia* ("*El Rostro*") is the allegedly infringing work. Latele alleges that Defendants hired the author of *Maria Maria* to develop *El Rostro*, a telenovela which Latele alleges is so similar to *Maria Maria* that the public and press have designated it as a remake or retelling. Latele's three-count Complaint pursues claims for copyright infringement, contributory copyright infringement and vicarious copyright infringement. [ECF No. 1, pp. 15-22].

James Sammataro, of Stroock & Stroock & Lavan ("SSL"), Plaintiff's initial counsel of record, signed and filed the lawsuit. [ECF No. 1, p. 24]. At an August 20-21, 2014 evidentiary hearing (the "Evidentiary Hearing") designed to determine whether certain privileged documents in RAL's possession should be produced to Defendants in response to a discovery subpoena, he testified that Robert Allen Law ("RAL") was the "conduit" for nearly all documents and information he received from Plaintiff.[5] [ECF No. 324, p. 24]. This included documents and information related to Plaintiff's discovery responses. [*Id.*]. RAL was Plaintiff's outside general counsel and provided significant assistance to SSL in this litigation. [*Id.* at 25]. In particular, Peggy Garcia, an RAL attorney, coordinated the production of documents and information given to Mr. Sammataro. [*Id.* at pp. 24-25, 116].

Neither Plaintiff, nor RAL, ever disclosed critical copyright transfers, negotiations leading up to the execution of transfer documents, or related documents to

---

5 The Evidentiary Hearing was held, in part, to obtain evidence concerning Defendants' argument that the crime-fraud exception generated a waiver of the attorney-client privilege for the RAL documents.

SSL despite repeated, direct inquiries during SSL's investigation of the Complaint and preparation of responses to discovery. As described below, Mr. Sammataro did not see several key documents until they were included as exhibits to Defendants' instant motion to dismiss, filed on March 31, 2014. [ECF No. 324, pp. 39-42]. He also had no knowledge of those transactions before Defendants filed their dismissal motion (long after he was no longer involved in this case). [*Id.*].

Ms. Garcia graduated from law school in December 2008. [ECF No. 325, pp. 58-59]. She began working at RAL in January of 2010. [*Id.*]. She has never done any litigation work. [*Id.*]. RAL has three full-time litigation attorneys and one attorney who does both litigation and real estate law, but she never consulted with any of them about the discovery-related assistance she provided to Plaintiff Latele and the SSL firm in this case. [*Id.* at pp. 58-61]. Before this lawsuit, Ms. Garcia never helped clients in reviewing proposed interrogatory answers, reviewing proposed responses to document requests or reviewing other responses to discovery. [*Id.*].

Notwithstanding this lack of litigation experience, Ms. Garcia testified at the Evidentiary Hearing that she reviewed discovery responses with Fernando Fraiz, Plaintiff's principal, and was aware of documents executed in April 2012 transferring *Maria Maria* first to Mr. Fraiz (the "First Assignment"), and then to Latele U.S. (the "Second Assignment").[6] [*Id.* at pp. 58- 62]. Ms. Garcia drafted and notarized some of the

[6] The Parties and this Court have previously outlined in detail the First Assignment, the Second Assignment, the Joint Consent and the Addendum -- all

documents; yet she did not reveal this information to SSL or ensure it was included in interrogatory answers, some of which she also notarized. [*Id.*]. She admitted, in retrospect, that the information and documents *should have been disclosed*. [*Id.* at pp. 61-64].

The First Assignment and Second Assignment are at the heart of Defendants' motion to dismiss. Basically, Defendants say Latele lacks standing to bring these copyright claims because it no longer owned the copyright to *Maria Maria* as of the time the lawsuit was filed. After Defendants filed their motion to dismiss, Latele produced an "Addendum," supposedly prepared two years earlier, which, if true, Latele contends would completely undermine the standing-based dismissal motion. Defendants accuse Latele of fraudulently creating the Addendum and falsely claiming it was prepared in 2012, rather than in 2014 (in response to the motion to dismiss).

Ms. Garcia's only knowledge of the so-called "Addendum," which Plaintiff now claims reversed the First Assignment (which Mr. Fraiz described as an "involuntary

---

documents that play a key role in the motion to dismiss at issue here. [*See, e.g.*, ECF No. 362]. The parties agree that Mr. Fraiz, Plaintiff's principal and highest authority, entered into the first three of these transactions less than four months before this action was filed. The First Assignment was a document executed in April 2012 that transferred *Maria Maria* to Mr. Fraiz personally. The Second Assignment, also executed in April 2012, transferred *Maria Maria* from Mr. Fraiz to Mr. Fraiz's wholly owned Florida company, Latele U.S. The Joint Consent, dated April 18, 2012, authorized Mr. Fraiz to enter into the Second Assignment on behalf of Latele U.S. Plaintiff claims that the Addendum was executed in April 2012 as well, and that it rescinded (or corrected) the transfers made in the First and Second Assignment. Defendants disagree. These documents are examined in more detail below, at section I.A.

error") came from oral conversations with Mr. Fraiz. She advised Mr. Fraiz that "a transfer of *Maria Maria* would negatively affect this case." [ECF No. 324, pp. 118-19].

Ms. Garcia testified that she did not disclose the existence of these transactions (whether they were undone, rescinded, aborted, canceled, superseded, corrected or otherwise deemed no longer valid) to SSL or to Defendants because her understanding was that the underlying transaction never went through. [ECF No. 325, p. 60]. She did not do any independent legal research on her own to see if the information about the transactions should have been disclosed in interrogatory answers or whether documents concerning the transactions should have been produced in response to document requests. [*Id.* at p. 61]. She did not consult with any of the RAL litigation attorneys to see if they would have disclosed the information. [*Id.* at pp. 60-61]. And she did not see the Addendum which supposedly (if not manufactured after the fact) reversed the First Assignment. [ECF No. 324, pp. 90, 106-07].

Although Ms. Garcia notarized one of the transaction documents, she did not keep a copy. [*Id.* at p. 88-89]. She returned the original to Mr. Fraiz but did not ask him for a copy when she was marshaling documents for the SSL firm. [*Id.*].

Fernando Fraiz admitted executing the First and Second Assignments but testified that the transfers, negotiations and related documents were never disclosed by Plaintiff in discovery because the deal was never consummated; and regardless, he claimed, *Maria Maria* was never an intended part of the deal. [ECF No. 324, pp. 256, 262-

64, 267]. He testified that including *Maria Maria* in the transfers was a "mistake" he sought to correct with the Addendum. [*Id.* at p. 268].

**A. The Specific Discovery Conduct at Issue**

At the Evidentiary Hearing, Ms. Garcia admitted she was aware of the Transfer Documents and the Addendum; in fact, she drafted the Second Assignment and Joint Consent. [ECF No. 324, pp. 85, 87]. As Plaintiff's outside general counsel, RAL coordinated Plaintiff's responses to discovery requests in this case with outside litigation counsel (i.e., SSL). [*Id.* at pp. 25, 116]. Ms. Garcia reviewed with Mr. Fraiz the draft answers to some of Defendants' interrogatories. For example, Ms. Garcia reviewed Plaintiff's Answers and Objections to Defendant Telemundo Studios Miami, LLC's First Set of Interrogatories with Mr. Fraiz and notarized his signature on that document. [ECF No. 324, pp. 88, 91-96]. The first interrogatory sought detailed information about *Maria Maria's* chain of title.[7]

In its interrogatory answer, Plaintiff failed to identify -- or make any reference to -- the Transfer Documents and failed to identify Mr. Fraiz or Latele U.S. as "entities or individuals who have ever owned [*Maria Maria*]," though at the Evidentiary Hearing on the privilege waiver issue, Ms. Garcia admitted that "[i]n hindsight I should have."

---

7 Plaintiff's Answers and Objections to Defendants' First Set of Interrogatories can be found at ECF No. 166-3, pp. 68-79. The first interrogatory sought information related to "all prior owners of [*Maria Maria*], all transfers or assignments of ownership or other transactions affecting ownership or any rights in and to [*Maria Maria*], and . . . any other entities or individuals who have ever owned [*Maria Maria*]."

[ECF No. 325, p. 61]. Plaintiff failed to produce these documents in response to Defendants' document requests. Request 19 of Defendants' Second Request for Production (served November 16, 2012) sought: "All documents reflecting or evidencing any transfers, licenses, sublicenses, encumbrances, pledges, or any other transactions of any kind involving any of the copyrights or other intellectual property rights of any kind, or any other rights related to the work(s) allegedly infringed."[8]

In response to the document request, Plaintiff "agree[d] to produce all responsive non-privileged documents specifically pertaining to *Maria Maria* . . . . " [Ex. 42, pp. 16-17]. Nevertheless, Plaintiff never produced or otherwise disclosed the Transfer Documents or Addendum in response to this or any other discovery requests.

Defendants' Fourth Request for Production sought, at Request 11:

> Communications between Plaintiff (specifically including any of its officers and affiliated entities) and LaTele Productions, Inc. [*i.e.* Latele U.S.] (or any predecessor, successor, or related entities), regarding any transaction, offer, arrangement, or proposal relating to telenovelas, including, without limitation, the . . . assignment . . . of any telenovela, including, without limitation, *Maria Maria* . . . .

[Ex. 43, p. 6]. In response, Plaintiff stated: "There are NO responsive documents in LATELE'S possession, custody or control." [Ex. 44, p. 2] (emphasis in original). Defendants' other document requests and interrogatories sought information about

---

[8] Defendants' Second Request for Production was Exhibit 42 at the August 20-21, 2014 Evidentiary Hearing. References to exhibits are to those exhibits admitted at the Evidentiary Hearing. A full list of admitted Evidentiary Hearing exhibits is available at ECF No. 323.

negotiations and other documents.[9] In each of these document requests, Defendants sought "all electronically stored information" ("ESI") in addition to other formats, and thus the requests included metadata.[10]

Defendants previously have urged that Plaintiff's discovery violations -- *i.e.*, Latele's failure to produce the Transfer Documents and Latele's purported fabrication of the Addendum -- were sufficient to meet the crime-fraud exception and warrant waiver of the attorney client privilege in connection with certain RAL documents. The Evidentiary Hearing was on these very issues and a significant part of that hearing involved the circumstances under which the Transfer Documents and the Addendum were created (and the facts surrounding the purported public filing of the Addendum with a Venezuelan notary).

Mr. Fraiz testified at the Evidentiary Hearing that the First Assignment was "corrected" and the Second Assignment and Joint Consent were, for all practical purposes, ineffective. [ECF No. 324, p. 242]. Defendants contend that Mr. Fraiz's testimony on this point is not credible. They also make another argument: even if the

---

9 *See, e.g.*, Ex. 4, pp. 2-4 (Plaintiff's Amended Answers to Defendants' First Set of Interrogatories), Interrogatories 1-3 (seeking information about "negotiations regarding the prospective sale and/or licensing of *Maria Maria*"), Interrogatories 4-6 (seeking information about "offer[s] . . . or proposals concerning telenovelas"); ECF No. 125-7, p. 4, Requests 1-2 (seeking documents and communications reflecting "negotiations regarding the prospective sale and/or licensing of *Maria Maria*").

10 *See, e.g.*, Ex. 43, p. 2 (defining "[d]ocuments" to include "all electronically stored information"). The parties agreed to a protocol for production of ESI. [ECF No. 112, p. 17].

transactions **were** undone or reversed or otherwise ineffective, they were unquestionably **responsive** to multiple discovery requests propounded by Defendants. Each attorney who testified (including Ms. Garcia herself) indicated that these documents *were* responsive to requests for documents reflecting any transactions involving *Maria Maria*.[11] But Plaintiff repeatedly swore that no such documents or transactions existed in its possession, custody or control.

For instance, on February 26, 2014, the then-assigned magistrate judge issued an Omnibus Order, which denied, in part, Defendants' Consolidated Motion to Compel, based on Plaintiff's statements that "it has no responsive documents" and "it has 'nothing else to produce,'" but clarified "that Plaintiff is obligated to produce all active and past negotiations regarding Maria Maria" and required that "Plaintiff shall clarify in a proper response that it has produced 'all responsive documents.'" [ECF No. 134, pp. 2-3].

The Omnibus Order (on discovery issues) also required Plaintiff to "provide the exact searches [for ESI] that were performed by its IT personnel." [*Id.* at p. 2]. On February 27, 2014, Defendants' counsel wrote to Plaintiff indicating "Defendants' position that a complete response to this portion of the Omnibus Order would require

---

11 Ms. Garcia testified that she never advised Mr. Fraiz not to disclose the transactions reflected in the First Assignment, the Second Assignment or the Joint Written Consent. [ECF No. 324, pp. 93-95]. She also testified that Mr. Fraiz never asked her to not disclose the transactions. [*Id.*].

[Plaintiff] to state not only what search terms were used, but also what locations were searched, for what types of ESI, on what dates." [ECF No. 166-4].

On March 7, 2014, LaTele filed its Verified Notice of Full Compliance with Omnibus Order. [ECF No. 144]. In response to Defendants' request for "Negotiations for the Sale, Licensing, Transfer or Other Transactions related to the Catalogue of Programming Received from Marte TV," Plaintiff stated: "There are NO additional responsive documents in Plaintiff's possession custody or control to produce. To the extent any responsive documents may exist, they would be in the custody, possession and control of a third party, Plaintiff's exclusive distributor, SOMOS, who is under subpoena to produce same (and in fact has already done so)." [*Id.* at p. 2] (emphasis in original).

In a written response to Defendants' request for "Documents Reflecting Ownership, Transactions, or Disputes of the Asserted Work," Plaintiff stated: "Plaintiff hereby clarifies, for the record, that *all* responsive documents to this issue have already been produced." [*Id.* at p. 3]. Plaintiff also attached a sworn Affidavit executed by Fernando Fraiz on March 7, 2014, wherein he attested: "all responsive documents regarding the asserted work, meaning documents reflecting ownership, transactions, or disputes about same, have already been produced by Plaintiff as to responsive documents in its custody, possession, and control." [ECF No. 141-1, p. 2].

The Court previously found that these statements -- made while Plaintiff silently withheld responsive documents and provided incorrect interrogatory answers -- were

**false**.[12] [ECF No. 362, p. 15]. Moreover, the Court also noted that Plaintiff could have had a strategic motivation to hide the existence of the transactions and the documents which evidenced them.[13] [*Id.*].

---

[12] In a deposition, Mr. Fraiz testified that he never contemplated personally owning any rights to *Maria Maria* and that such a transaction was never executed. In addition, when Mr. Fraiz was asked at his deposition about an unsigned copy of the First Assignment, Plaintiff's counsel objected and implied that the question was merely "hypothetical" and Mr. Fraiz then stated that "if at any time this means to perfect it, it was never executed." [ECF No. 166-1, pp. 8-11].

[13] As outlined in Defendants' motion to dismiss, a plaintiff seeking to bring a claim for copyright infringement must exclusively own the work it claims was infringed at the time the lawsuit is filed. Without such ownership, a plaintiff lacks standing to bring the claim. *See e.g., Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1986 (11th Cir. 2011) (finding lack of subject matter jurisdiction because Plaintiff did not currently own a copyright in the work at issue). If the Transfer Documents were not undone by the so-called Addendum, then, Defendants argue, Plaintiff has no standing to pursue the case and the Court must dismiss it. It was only after Defendants filed their motion to dismiss that Plaintiff produced the Addendum.

The Undersigned is not now making any findings about the legal significance of the Transfer Documents or the Addendum -- other than to conclude that they were **responsive to discovery requests**. Likewise, the Court is not reaching any conclusions here about Plaintiff's standing (or lack of standing) to pursue this lawsuit.

Nevertheless, a federal court is always concerned about subject matter jurisdiction. Therefore, Latele will need to establish at trial its standing to pursue the lawsuit. In other words, it will need to prove that it exclusively owned the rights to *Maria Maria* on the day it filed the lawsuit. Owning the rights by the time of trial is insufficient if ownership when the lawsuit was filed is not established. *Dominion Assets*, 2014 WL 2937058 at *9-10 (noting that the plaintiff indisputably owned the patents at the time of the motion but dismissing because the plaintiff could not demonstrate that it held legal title at the inception of the lawsuit).

**B. The Alleged Fabrication of the Addendum**

The parties vigorously disagree about the bona fides of the so-called Addendum. Plaintiff contends it is legitimate while Defendants brand it as a fraudulent sham.

While it is uncontroverted that the Addendum first appeared in this case on April 17, 2014, as part of Plaintiff's Response to Defendant's Motion to Dismiss, which asserted that the Transfer Documents deprived Plaintiff of standing, Plaintiff claims the Addendum was created and executed in April 2012. [ECF Nos. 185, p. 6; 185-4]. In support of their contention that the Addendum was fabricated in response to the Motion to Dismiss, Defendants produced documentary evidence and expert testimony that the face of the Addendum indicates it was filed, and should appear, at a unique page of the records of a particular notary office. [ECF No. 325, pp. 75-85]. Nevertheless, when Defendants' expert inspected those records, a completely different document appeared. Neither party has located any notary records where the Addendum was actually recorded. Thus, Defendants assert the Addendum was not actually filed with that notary office and instead was created after-the-fact.

However, as referenced above, the Addendum itself and Mr. Fraiz's testimony support Plaintiff's position that it was created in 2012.

In addition, Plaintiff submitted the declaration (made under penalty of perjury) of Paola Alexandra Munive Castillo, a Venezuelan attorney. [ECF No. 331-2]. In this affidavit, Ms. Munive explained that she prepared, drafted and reviewed the

Addendum in 2012, at the request of Xiomara Ruiz, an agent of Mr. Fraiz's. [*Id.*]. Ms. Ruiz also submitted a declaration. [ECF No. 331-1].

Although Ms. Munive's declaration explains that she was involved with the Addendum in 2012, Defendants emphasize that there are several suspicious aspects to her declaration. For example, no metadata or drafts were produced. Ms. Munive, however, proffered an explanation: she said she no longer has the electronic file of the Addendum she drafted in 2012 because she prepared it on a computer she no longer possesses. [ECF No. 331-2, p. 2]. Ms. Munive's declaration did not say anything about the *server*, but Ms. Ruiz's declaration said she asked Ms. Munive to conduct a search for ESI and metadata on her computer and server but that the search yielded no results. [ECF No. 331-1, p. 1].

Defendants view the absence of metadata/ESI and drafts as evidence further establishing that the Addendum "was in fact fabricated [in 2014] as part of Plaintiff's effort to manufacture standing and explain away its failure to disclose the Transfer Documents and the transactions reflected therein." [ECF 359-1, p. 12].

Defendants also argue that Plaintiff's failure to maintain such documents and ESI, created less than 4 months before filing its Complaint in this case [ECF No. 1] and after signing multiple tolling agreements [ECF No. 161-1, pp. 12-32], constitutes spoliation of evidence and warrants an adverse inference.

Defendants also contend that the Addendum, even if created in 2012, should have been disclosed in response to multiple discovery requests.

### C. The November 3, 2014 Discovery Order and Plaintiff's Response

On November 3, 2014, the Undersigned issued an Order on Whether Defendants are Entitled to Privileged Documents from Robert Allen Law, P.A. [ECF No. 362]. This Order specifically found that Plaintiff's statements in response to certain discovery requests and interrogatories, as outlined above at section I.A., were **false**. [ECF No. 362, p. 15]. In connection with that finding, the Undersigned explicitly noted that while Plaintiff's discovery misconduct did not create a waiver of privilege for the RAL privileged documents under the crime-fraud exception, other consequences would follow "in a later ruling on the separately filed motion to dismiss." [*Id.* at pp. 16-17].

On November 7, 2014, Plaintiff, perhaps attempting to anticipate and forestall those "consequences," filed two notices. In the first, titled "Plaintiff's Corrected Notice of Compliance with Court Order [DE-134]," Plaintiff amends its original verified notice of compliance, filed in response to the Court's February 26, 2014 Order, that explicitly stated it had "NO additional responsive documents." Plaintiff purports to correct that prior statement with the substitution of a new statement that notes it likely *did* have the Transfer Documents in its possession as of March 7, 2014 as it received a courtesy copy of the production made by non-party Somos, and the Transfer Documents were in that production. Plaintiff states it did not then produce the Transfer Documents to Defendants because Defendants already had those documents at that time, by way of Somos. Finally, the substituted response notes that Plaintiff's *counsel* did not have a

copy of the Addendum at the time the verified notice of compliance was filed. [ECF No. 366, p. 2].

Plaintiff also filed a "Notice of Serving Supplemental and Corrected Discovery Response" on November 7, 2014. [ECF No. 367]. This Notice documents Plaintiff's "formal, written supplementation to and correction of its prior discovery responses as to requests for information re: negotiations for '*Maria Maria,*' active or in the past." [*Id.* at p. 3]. Plaintiff also notes that it is serving a supplemental answer to an interrogatory regarding control of Latele. [*Id.* at p. 4].

Plaintiff's two most recently filed submissions cannot remedy its past conduct. Neither the Addendum nor the Transfer Documents were produced by Plaintiff before February 27, 2014. Mr. Fraiz's affidavit submitted with Latele's verified notice of compliance stated that "all responsive documents . . . reflecting ownership, transactions, or disputes have already been produced by Plaintiff." [ECF No. 144-1, p. 2]. Peggy Garcia now admits the Transfer Documents and Addendum were responsive and should have been produced. [ECF No. 325, pp. 61-64]. Neither Plaintiff nor Ms. Garcia ever advised Mr. Sammataro, its counsel of record in this action at the time, about the Transfer Documents or the Addendum [*Id.* at p. 60], and Plaintiff's own current counsel of record condemned Mr. Fraiz's failure to cooperate in discovery. [ECF No. 328, pp. 11-12].[14] Moreover, the Addendum was not produced until April 2014 -- but only after

---

14 By prior Order, the Undersigned required that certain documents in the so-called Somos Production be produced by Plaintiff, which had asserted attorney-client

Defendants filed their motion to dismiss for lack of standing. In addition, the two submissions do not impact Mr. Fraiz's false or misleading deposition testimony, and they do not significantly undermine Defendants' theory that it is no coincidence that the two documents which could remove Plaintiff's standing were not timely produced or that the document which reversed or corrected the transactions appeared only when necessary to fend off a standing-based dismissal motion.

II. **Legal Analysis**

Defendants' motion to dismiss for lack of subject matter jurisdiction, based on the view that Latele lacks standing, was filed *before* Defendants learned of the Addendum. The dismissal motion is based on the theory that the Transfer Documents demonstrate that Latele did not own the exclusive right to *Maria Maria* when it filed the lawsuit. But now that the Addendum has surfaced, the analysis must also change.

---

privilege over those materials notwithstanding that they were (a) in the possession of Somos, and (b) Plaintiff acknowledged that Somos was outside the scope of any attorney-client privilege Plaintiff might have with its counsel. [ECF No. 328, p. 10].

In that Order, the Undersigned noted that several of the emails in question, which have now been produced to Defendants, described Plaintiff's potential failure to meet discovery obligations. For instance, one email, from Plaintiff's current counsel of record to Mr. Fraiz had the subject line "Discovery Failures." [*Id.* at pp. 11-12]. In another email [ECF No. 296-3], Latele's current litigation counsel complained to Mr. Fraiz about his "level of non-compliance, resistance and delaying tactics." In another, he advises that "Latele may lose the case and/or be sanctioned for violating the discovery rules." The Court previously ordered Latele to produce these formerly privileged communications to Defendants because Latele waived privilege by intentionally sending the documents to Somos, a third party.

If the Addendum was created and executed in 2012 (as opposed to being fraudulently manufactured in 2014), then Defendants' argument about the significance of the Transfer Documents is significantly undermined (and may well be completely unavailable). If the Addendum was fabricated in 2014 (in an effort to trick Defendants and the Court), then the Transfer Documents would affect Plaintiff's standing to file this lawsuit in 2012 -- and would also create grounds for dismissal under a fraud on the court doctrine.

These are big "ifs," however. They cannot be resolved now because there is evidence to support both sides' positions. *Belleri v. United States,* 712 F.3d 543, 547-49 (11th Cir. 2013) (disagreeing with the defendant's argument that the appellate court could determine subject matter jurisdiction by deciding whether the plaintiff is an alien and whether he obtained derivative citizenship and remanding to the trial court after rejecting the defendant's argument that remand was unnecessary).

However, there is no doubt that Latele never timely produced the Transfer Documents and the Addendum -- and that this failure has significantly prejudiced Defendants in their ability to adequately investigate these documents. Defendants have not had the opportunity to take the depositions of Ms. Munive and Ms. Ruiz. They have not had the opportunity to thoroughly question Mr. Fraiz about the Transfer Documents, and they have not had the chance to thoroughly question Ms. Garcia about her involvement in the discovery process. Similarly, they were not previously aware of the need to probe the circumstances surrounding these documents -- because they were

simply not aware that the Transfer Documents existed. In addition, Defendants were not made aware of the need to investigate Latele U.S. because Plaintiff never timely disclosed its existence nor its involvement with *Maria Maria*.

Likewise, there is no doubt that these documents and the information about the transactions reflected in them were responsive to numerous discovery requests -- and that Plaintiff provided false discovery responses which hid the existence of the documents and the transactions. In its opposition to the instant motion, Plaintiff argues that the Addendum did not have to be produced because it is "an internal document to the failed negotiations of certain of Plaintiff's telenovelas, that excludes the subject telenovela, *Maria Maria*." [ECF No. 185, p. 6, n.6]. The Court unequivocally rejects this theory, as the Addendum is clearly responsive to a request for documents evidencing "all active and past negotiations regarding *Maria Maria*." In fact, Plaintiff's argument is illogical and unconvincing on its face. The primary reason for the Addendum was to undo or reverse or correct the purported mistake of **including** *Maria Maria* in the Transfer Documents. If *Maria Maria* had clearly been excluded from the negotiations with Televisa (i.e., negotiations which Plaintiff says never "went through"), then the Addendum would have been entirely unnecessary. [ECF No. 325, pp. 60-62].

Given the potential significance of these documents (e.g., they might mean that Plaintiff lacks standing to pursue the copyright claims or they might establish that Plaintiff purported a fraud on the Court by fabricating a critical document), the only fair and reasonable way to minimize prejudice to Defendants short of outright dismissal is

to permit them to take additional discovery. Because some of the witnesses are out of the country and because the trial is scheduled to occur relatively soon, the need to give Defendants additional discovery means that the case must be **removed from the trial calendar**. The Court will issue a new trial scheduling order after it has the November 21, 2014 discovery hearing on Defendants' request for a forensic analysis of Plaintiff's electronic media (and after the Undersigned issues a ruling on that request).

In the meantime, however, Defendants may take discovery (both written and depositions) concerning the Transfer Documents, the Addendum, the lack of ESI/metadata, the potential spoliation or destruction of evidence, assessing whether Plaintiff's conduct constitutes bad faith[15] and the circumstances surrounding the purported witnessing and filing of the Addendum in Venezuela. Defendants are specifically authorized to retake depositions, including of Mr. Fraiz, as part of this remedial process to eliminate or substantially minimize prejudice to Defendants.

---

[15] In the Eleventh Circuit, bad faith is the key to unlocking the Court's inherent power to impose sanctions for spoliation. *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) (no adverse inference from missing label because there was no indication of bad faith). *See also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009). The Undersigned does not have enough information to determine whether bad faith exists in connection with Latele's apparent failure to preserve ESI. Deposition testimony and/or additional document production from Latele may shed light on this. However, the issue of Latele's failure to preserve ESI (such as metadata for the Addendum purportedly created in Venezuela in 2012) is analyzed **differently** than its failure to produce the Transfer Documents and the Addendum, in part because the factual record has not been fully developed.

Defendants have until February 10, 2015 to take the additional discovery. Plaintiff shall cooperate in facilitating the discovery requests, especially if they involve Plaintiff's employees or agents in Venezuela.

The Undersigned has reviewed portions of the transcript of Mr. Fraiz's deposition, where Plaintiff's counsel made speaking objections which Defendants criticize as improper coaching efforts. [ECF No. 166-1]. Without making a finding on whether counsel's repeated objections strayed over the line into improper coaching, the Court is putting all counsel on notice that their deposition behavior must comply with all applicable rules -- and that the Undersigned will not hesitate to impose sanctions if counsel violate the rules. To avoid any ambiguity, the Undersigned considers an "if you know" comment to a deponent before he or she answers a deposition question to usually be improper coaching, designed to signal the witness to answer that he or she does not know or remember the answer.

The Undersigned is also awarding attorney's fees in Defendant's favor in connection with the discovery violations at issue in the motion to dismiss (and as further outlined at the Evidentiary Hearing). Even assuming, as Plaintiff's urge, that the Addendum *was* executed in 2012, neither it nor the Transfer Documents were timely produced to Defendants. So, even accepting Plaintiff's view of the facts, but for their failure to timely produce these critical documents, coupled with Plaintiff's other discovery misconduct outlined here, Defendants would not have incurred the cost of drafting and filing their motion to dismiss or of engaging in extensive discovery-related

litigation to get at the heart of the copyright chain of title issue. The award is being entered under Federal Rule of Civil Procedure 37(b)(2)(A)(v),[16] Federal Rule of Civil Procedure 37(b)(2) (failure to comply with a court order)[17] and the Court's inherent power. The fees award is a consequence of Latele's bad faith failure to be truthful in discovery. As explained by the band Incubus in its "Consequence" song from its double platinum "Make Yourself" album, ""You better not blink/ Oh blink / The consequence is a bigger word than you think."[18]

In rejecting Defendants' request for dismissal, the Undersigned recognizes the strong preference for a determination on the merits of a dispute. *See generally Se. Banking Corp. v. Basett,* 204 F.3d 1322 (11th Cir. 2000) (reversing lower court's entry of a default judgment for discovery violations). *See also Bernal*, 479 F. Supp. 2d at 1301-02 (modifying magistrate judge's recommendation by not striking answer and affirmative defenses but instead ordering that the jury would be instructed that certain facts had been

16 *See, e.g., Bernal v. All Am. Inv. Realty, Inc.,* 479 F. Supp. 2d 1291, 1335 (S.D. Fla. 2007).

17 The rule gives trial judges broad discovery to fashion appropriate sanctions for violation of discovery orders. *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536 (11th Cir. 1993). The severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less-drastic sanctions would not ensure compliance with the court's orders. *Navarro v. Cohen,* 856 F.2d 141, 142 (11th Cir. 1988). *See also Betty K Agencies, Ltd. v. M/V Monada,* 432 F.3d 1333, 1337-38 (11th Cir. 2005) (vacating with-prejudice dismissal and noting that such a result "is an extreme sanction that may be properly imposed *only* when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice.") (internal quotation omitted).

18 Epic Records (1999).

established -- including defendant's spoliation of evidence and procurement of false evidence). On the other hand, this preference may well yield if the Court determines later that Latele manufactured the Addendum or otherwise tried to perpetrate a fraud on the Court.

In particular, a fees award against **Latele** itself is justified as the Court finds that Latele either recklessly or intentionally failed to timely produce the Transfer Documents and the Addendum. Either way, I find that Latele's failure to timely produce the Transfer Documents and the Addendum constitutes bad faith discovery misconduct. In addition, the Court finds that Mr. Fraiz's deposition testimony about these documents, the negotiations with Televisa and the execution of the documents was, at best, strategically misleading, and perhaps perjurious.[19] Even if Latele's conduct was merely reckless, instead of being motivated by purposeful bad faith, I find that this reckless conduct constitutes the requisite bad faith to justify sanctions under the Court's inherent power.

The Court is specifically **not** entering a fees award against Mr. Sammataro and SSL because there is absolutely no evidence to even suggest that they knew about the Transfer Documents, the Addendum, the negotiations with Televisa or the circumstances surrounding the execution of the documents. In fact, all the evidence is to the contrary, establishing that they did *not* know of these matters.

---

19 *See generally, Allapattah Servs., Inc. v. Exxon Corp.*, 373 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (inherent power can be invoked even if procedural rules exist which sanction the same conduct).

The Court is not entering a fees award against Latele's *current* counsel because it is unclear when they first learned of the Transfer Documents, the Addendum or the circumstances surrounding the execution of those papers. In addition, the record is hazy on when current counsel actually realized the documents had been produced to them and when they understood the documents' significance.

Defendants shall within five days of this Order submit to Plaintiff an affidavit on the amount of fees being sought (with supporting backup) and then attempt to reach an agreement with Plaintiff concerning the amount of fees. Defendants may seek attorney's fees related to the instant motion to dismiss, as well as any other fees incurred in litigating discovery disputes related to Plaintiff's non-production of the Transfer Documents and Addendum. If an agreement is reached within 10 days of this Order, then the parties shall advise the Court in a brief, jointly-filed notice and the fees shall be paid within 7 days after the filing of the notice. If the fees are paid, then Plaintiff shall within five days of payment submit to the Court's efile inbox a Notice of Compliance, attaching a declaration confirming the payment and noting the amount. If an agreement cannot be reached by the deadline, then the parties shall so advise the Court, which will then require counsel for **both** Plaintiff and Defendants to submit an affidavit (with backup documentation) of the fees incurred in connection with the discovery dispute

(either related to filing or opposing the motion to dismiss or advocating for or against production of the discovery materials at issue here).[20]

**One final point**: Federal Rule of Civil Procedure 37 authorizes the Court to enter a fees award against the party, the party's counsel or both. Given RAL's involvement as the clearinghouse for Latele's documents and information to SSL and given Ms. Garcia's activities in connection with the Transfer Documents, reviewing interrogatory answers and providing documents to SSL, the Court will give RAL the opportunity to brief the issue of whether any portion of the fees award should be entered against it, and, if so, what percentage. The Court will also give Defendants and Latele's current counsel the chance to weigh in on this issue. Therefore, RAL, Plaintiff and Defendants *may* (but are not required to) submit a memorandum on this issue of no more than 10 double-spaced pages, excluding signature block and certificate of service, within 10 days of this Order.

---

[20] If no agreement can be reached, then the Court will evaluate the attorney's fees incurred by all parties in order to assess the reasonableness of the fees requested by Defendants.

Rule 37 authorizes a variety of sanctions, including dismissal of the entire action, rendering a default judgment against the disobedient party, striking pleadings in whole or in part, prohibiting the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters in evidence. The Court is not now imposing those harsher remedies because the Undersigned views the sanctions imposed -- additional discovery (taken only by Defendants), payment of certain discovery expenses and an attorney's fees award -- to be adequate. But the Undersigned may well reconsider these more-severe sanctions if presented with evidence that exhibits have been fraudulently created or that relevant evidence (such as metadata and ESI) has been destroyed. *Goforth v. Owens,* 766 F.2d 1533 (11th Cir. 1985) (affirming dismissal due to the plaintiff's counsel's pattern of delay and refusal to comply with court directions and noting there was no abuse of discretion).

The memoranda may be submitted regardless of whether there is an agreement as to the amount of fees.[21]

If there is an agreement among Plaintiff, Defendants, RAL and Plaintiff's current counsel on whether RAL should be financially responsible for some portion of the fees award (and, if so, how much), then notice of this agreement should be timely given to the Court. **In order to facilitate RAL's ability to timely submit a memorandum, Latele's current counsel shall forthwith provide a copy of this Order to RAL.**

---

[21] The Court might be authorized to award fees against RAL under the Court's inherent power and 28 U.S.C. § 1927, but those sources of authority require a finding of **bad faith**. *Amlong v. Denny's, Inc.*, 457 F.3d 1180, 1190 (11th Cir. 2006) (bad faith needed for section 1927 fees against counsel); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1988) (inherent power). Although reckless conduct is sufficient to justify sanctions requiring bad faith, negligent conduct, standing alone, will not support a finding of bad faith. *Amlong*, 457 F.3d at 1193.

RAL's activities were either maliciously intentional (e.g., purposefully hiding documents and information in discovery, in an improper attempt to help its client avoid a thorny standing issue), reckless (i.e., a "gross deviation from reasonable conduct," *Amlong*, 457 F.3d at 1191) or merely negligent (e.g., a comparatively inexperienced attorney with no litigation experience who exercised poor judgment in unilaterally deciding whether to produce documents and information in discovery or to her client's litigation counsel without consulting with litigation partners in her own firm and who then decided these related issues incorrectly). The Undersigned has not concluded how to categorize RAL's conduct, but Rule 37 does not require bad faith. In fact, it does not require negligence. Instead, the rule establishes a "loser pays" presumption to discovery disputes. If Defendants or Plaintiff's current counsel believe that RAL should also be responsible for fees either under Rule 37, Section 1927 or the Court's inherent power, then they shall so advise RAL in writing within five days of this Order, so that RAL may address the position in its optional memorandum. Therefore, the optional memoranda will, at a minimum, address the propriety of a fees award against RAL under Rule 37 and may (depending on the parties' positions) also discuss fees under Section 1927 and the Court's inherent power.

## III. Conclusion

The Motion to Dismiss is **Denied**. The Court will not dismiss the case for lack of subject matter jurisdiction because Defendants' argument that Plaintiff lacks standing hinges on contested facts. The Court will not dismiss this case based on discovery violations either -- dismissal as a sanction for discovery misconduct is the *most* severe sanction and the Court declines to do so at this time. However, as outlined in this Order, the Court will provide Defendants substantial relief in connection with Plaintiff's discovery misconduct:

**1)** The trial in this case will be continued to allow Defendants (and *not* Plaintiff) to conduct additional discovery. The Court will issue a new scheduling order once it rules on those issues noticed for hearing on November 21, 2014.

**2)** Defendants' additional discovery is subject to the following conditions:

**a.** The discovery is limited to this area of inquiry: the Transfer Documents, the Addendum, the lack of metadata produced by Plaintiff in connection with the Court's Post-Hearing Order [ECF No. 314], Plaintiff's potential spoliation or destruction of evidence, assessing whether Plaintiff's conduct constitutes bad faith and the circumstances surrounding the purported witnessing and filing of the Addendum in Venezuela. Defendants are specifically authorized to retake depositions, including of Mr. Fraiz.

**b.** The additional discovery must be completed by February 10, 2015. Plaintiff must cooperate in facilitating this discovery so that it may be completed before this deadline.

**c.** Plaintiff must pay the attendance fees for court reporters or videographers used at any future depositions scheduled by Defendants.

**d.** Plaintiff must pay the travel costs for one defense attorney at any future out-of-town depositions that Defendants choose to take.

**e.** Plaintiff must pay these discovery-related expenses within 30 days of receiving an invoice from Defendants.

**f.** Defendants may, if they choose, file another motion to dismiss the complaint for fraud on the court/intentional bad faith discovery abuse if additional discovery or other evidence obtained by Defendants establishes that Plaintiff fraudulently manufactured and post-dated the Addendum or that Plaintiff destroyed relevant evidence (such as ESI) after a duty to preserve evidence was created.

**3)** The Court is awarding Defendants attorney's fees in connection with the discovery violations at issue in the instant motion to dismiss. The fees award is governed by the following conditions:

**a.** Defendants shall within 5 days of this Order submit to Plaintiff an affidavit on the amount of fees being sought (with supporting backup) and then attempt to reach an agreement concerning the amount of fees. Defendants may seek attorney's fees related to the instant motion to dismiss, as well as any other fees

incurred in litigating discovery disputes related to Plaintiff's non-production of the Transfer Documents and Addendum. If an agreement is reached within 10 days of this Order, then the parties shall advise the Court in a brief, jointly-filed notice and the fees shall be paid within 7 days after the filing of the notice. If the fees are paid, then Plaintiff shall within five days of payment submit to the Court's efile inbox a Notice of Compliance, attaching a declaration confirming the payment and noting the amount. If an agreement cannot be reached by the deadline, then the parties shall so advise the Court, which will then require counsel for **both** Plaintiff and Defendants to submit an affidavit (with backup documentation) of the fees incurred in connection with the discovery dispute (either related to filing or opposing the motion to dismiss or advocating for or against production of the discovery materials at issue here).

**b.** If Defendants or Plaintiff's current counsel believe that RAL should also be responsible for fees either under Rule 37, section 1927 or the Court's inherent power, then they shall so advise RAL in writing within five days of this Order.

**c.** Defendants, Plaintiff and RAL may, but are not required to, file a memorandum of no more than 10 double-spaced pages, excluding signature block and certificate of service, within 10 days of this Order on the subject of whether the fees award should be entered against Latele, RAL or both.[22]

**DONE AND ORDERED** in Chambers, in Miami, Florida, November 10, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All Counsel of Record

---

22 In order to facilitate RAL's ability to timely submit an optional memorandum, Latele's current counsel shall forthwith provide a copy of this Order to RAL.