UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-22539-CIV- GOODMAN

**[Consent Case]**

LATELE TELEVISION, C.A.,

    Plaintiff,

v.

TELEMUNDO COMMUNICATIONS
GROUP, LLC, et al.,

    Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In the instant copyright infringement case, Plaintiff, Latele Television, C.A. ("Plaintiff" or "Latele") seeks a partial summary judgment on the issue of ownership of the copyrighted work at issue, a Venezuelan telenovela named "*Maria Maria.*" In its motion [ECF No. 170], Latele asks the Court to conclude that it is the rightful owner of a valid copyright in *Maria Maria.* The Undersigned has reviewed the motion, Defendants'[1] response [ECF No. 188] and Plaintiff's reply [ECF No. 207]. The Undersigned **denies** the

---

[1] The Defendants in this action include Telemundo Television Studios, LLC, Telemundo Studios Miami, LLC, Telemundo Network Group, LLC, Telemundo Internacional, LLC. Together, the Defendants are either referred to as "Defendants" or "Telemundo" in this Order.

motion. Not only is the ownership issue still in dispute, but it is one of the most vigorously litigated issues in the case.

In fact, although the Undersigned recently denied Defendants' motion to dismiss (which asserted the argument that Latele did not own *Maria Maria* when it filed this lawsuit), the Order denying that motion expressly noted that "Latele will need to establish at trial its standing to pursue the lawsuit. In other words, it will need to prove that it exclusively owned the rights to *Maria Maria* on the day it filed the lawsuit." [ECF No. 368, p. 15, n. 13]. Likewise, in analyzing the competing evidence surrounding Defendants' argument that Latele does not own the *Maria Maria* copyright because of certain purported transfers, the Undersigned described the theories as "big 'ifs'" and specifically noted that "they cannot be resolved now because there is evidence to support both sides' positions." [ECF No. 368, p. 21].

Given these comments about factual disputes in the Order denying the motion to dismiss for lack of subject matter jurisdiction -- an order issued long after the instant motion for partial summary judgment was filed -- no one should be surprised by this ruling which denies the partial summary judgment motion because of factual disputes. Although there are several factual disputes which would preclude a partial summary judgment in favor of either party on the copyright ownership issue, this Order will focus only on the transfers (and purported unwinding of the transfers) which were

previously at issue in the no-longer-pending motion to dismiss (and which were the subject of substantial testimony at an evidentiary hearing).[2]

## I. Factual Background

In its Complaint, Latele alleges different types of copyright infringement by Defendants of the popular *Maria Maria* ("MM" or "*Maria Maria*") telenovela, a Spanish-language soap opera. In particular, the works at issue are 198 episodes of television programming allegedly owned by Latele, originally airing in 1989, and 178 episodes of television programming allegedly aired by Defendants. *El Rostro de Analia* ("El Rostro") is the allegedly infringing work. Latele alleges that Defendants hired the author of *Maria Maria* to develop El Rostro, a telenovela which Latele alleges is so similar to *Maria Maria* that the public and press have designated it as a remake or retelling. Latele's three-count Complaint pursues claims for copyright infringement, contributory copyright infringement and vicarious copyright infringement. [ECF No. 1, pp. 15-22].

On April 1, 2012, Luis Villanueva, as President and Chief Executive Officer of Somos Distribution, LLC ("Somos"), Latele's "exclusive distributor," and Fernando Fraiz (Latele's president and principal), on behalf of himself, individually, and on behalf of LaTele and Marte TV (Latele's prior name), executed and entered into an "Assumption Agreement," drafted in the form of a letter addressed to LaTele

---

[2] In its response [ECF No. 188, p. 9], Defendants argue that the factual issues about the transfers (i.e., the ones raised in the Motion to Dismiss for Lack of Subject Matter Jurisdiction) are "reason enough to deny Plaintiff's Motion."

Productions, Inc. ("Latele US"). Latele US is a separate corporation, owned by Fraiz, which has never been a party to this lawsuit. [ECF No. 166-1, pp. 34-39].

The Assumption Agreement documents a formal and unconditional amendment to a prior Distribution Agreement between Somos, LaTele, Marte TV, and Fernando Fraiz. *Id.* The Assumption Agreement's purpose was to effectuate the parties' "interest[] in transferring certain rights to LaTele US in order to facilitate the licensing of the rights to the Content [including *Maria Maria*] to third parties" and "LaTele US['s] wish[] to assume and become bound by the Agreement (as amended) and assume all the rights and obligations of the Licensor as provided therein." [*Id.* at p. 34]. It was executed by Fernando Fraiz four times: on behalf of Marte TV; on behalf of LaTele Venezuela (i.e., the Plaintiff); on behalf of himself, individually; and on behalf of LaTele US. [*Id.* at p. 36].

*Maria Maria* is the first of eight (8) novelas specifically identified in the Assumption Agreement as content to be distributed by Somos. [*Id.* at p. 34].

Less than four months before Plaintiff filed this action, Fraiz, Plaintiff's principal and highest authority [ECF No. 324, pp. 26, 252-53], entered into three transactions involving *Maria Maria,* including: (1) the First Assignment -- a document dated April 18, 2012 that on its face transferred all rights in *Maria Maria* from Plaintiff to Fraiz personally; (2) the Second Assignment -- a second document dated April 18, 2012 that on its face transferred all rights in *Maria Maria* from Fraiz personally to Latele US; and

4

(3) a third document dated April 18, 2012 that authorized Fraiz to enter into the Second Assignment on behalf of Latele US (the "Joint Consent"). [ECF No. 324, pp. 81-88]. The First Assignment, Second Assignment, and Joint Consent are collectively referred to as the "Transfer Documents."[3]

In the Second Assignment, Mr. Fraiz, personally, is identified as the "Transferor," and "the holder of all copyrights and rights to the originally produced soap operas listed in Exhibit A hereto . . . ." [ECF No. 166-1, p. 53]. Exhibit A to the Second Assignment identifies *Maria Maria* as the first of eight novelas subject to that Agreement. [*Id.* at p. 59]. It identifies LaTele US as the "Transferee." [*Id.* at p. 53]. Paragraph (1) of the Second Assignment, entitled "Assignment and Transfer" (emphasis in original) reflects that Fraiz, as Transferor, "hereby unconditionally and irrevocably transfers, conveys, and assigns to Transferee [LaTele US] all his rights, title and interest in and to the Rights, together with all the exclusive rights granted to the owner of a copyright under Venezuelan and U.S. copyright laws." [*Id.* (emphasis added)].

Also in the Second Assignment, Fraiz specifically represented and warranted that "he holds all the copyrights and rights to the scripts and audiovisual works of the

---

[3] The First Assignment, Second Assignment, and Joint Consent were exhibits 12, 13, and 14, respectively, at an August 20-21, 2014 evidentiary hearing on privilege issues. A full list of exhibits admitted at the Hearing is available at ECF No. 323. The First Assignment is also found at ECF No. 24, pp. 11-17. The Second Assignment is also found at ECF No. 166-1, pp. 53-59. The Joint Consent is also found at ECF No. 166-1, p. 52.

5

originally produced soap operas and the Rights being transferred and assigned herein are his sole property and that no other party has any claim to such property." [*Id.* at p. 54].

Fraiz executed the Second Assignment on his own behalf, as "Transferor," and also as President of LaTele US, as "Transferee." [*Id.* at p. 58]. Both of Fraiz's signatures were separately notarized by Peggy J. Garcia, on April 18, 2012. [*Id.*]. Ms. Garcia is an attorney employed by Robert Allen Law, P.A., a Miami law firm that has appeared in this case on behalf of LaTele Venezuela as its "non-litigation counsel." [ECF Nos. 44; 45]. In filing material in this case for Latele (when it appeared for a limited purpose of submitting a response to a show cause order), RAL advised (in October 2013) that it "represents Latele in its non-litigation interests." [ECF No. 44, p. 1].

Fraiz executed the Joint Consent (also on April 18, 2012), as both the Sole Director and Shareholder of LaTele US, authorizing the purchase of the rights to *Maria Maria*. [ECF No. 166-1, p. 52]. That same day, April 18, 2012, Fraiz emailed signed versions of the Transfer Documents to Luis Villanueva and Ivan Morales, Esq. at Somos using one of his company email addresses and accounts and he did so again on the following day, April 19, 2012, from his personal email address. [*Id.* at pp. 61-70, 72-80].

In addition, on April 18, 2012, Somos provided comments on a draft License Agreement between LaTele US as "Licensor" and Televisa, S.A. de C.V. as "Licensee."

That draft agreement recites that LaTele US "solely owns and controls all rights in and to" *Maria Maria* and other novelas. [ECF No. 166-1, pp. 82-96]. In the draft agreement, LaTele US proposes to "grant[] to Licensee an exclusive license of the Rights in and to" *Maria Maria*. [*Id.* at p. 83]. LaTele US represents and warrants that it: "has the sole, full right and authority to enter into this Agreement;" "has not made and will not make any grant, assignment, or agreement that will or might conflict or interfere with the rights granted to Licensee herein, provided, however, that [LaTele US] shall be free to resolve and/or settle its allegations of copyright infringement related to the Telenovela Program *Maria Maria*;" and "is the sole and exclusive owner of the Rights in and to" *Maria Maria*. [*Id.* at pp. 86-87].

On April 19, 2012, Ivan Morales, General Counsel & Corporate Secretary of Somos, emailed fully executed copies of the Second Assignment and Joint Consent to two executives at Televisa. [*Id.* at pp. 61-70].

These documents were at the heart of Defendants' motion to dismiss. [ECF No. 166]. Basically, Defendants argued that Latele lacks standing to bring these copyright claims because it no longer owned the copyright to *Maria Maria* as of the time the lawsuit was filed.

After Defendants filed their motion to dismiss, Latele produced an "Addendum," supposedly prepared two years earlier, that purports to undo or nullify the First Assignment. Latele contends that this completely undermines the now-denied

7

standing-based dismissal motion. Defendants accuse Latele of fraudulently creating the Addendum and falsely claiming it was prepared in 2012, rather than in 2014 (in response to the Motion to Dismiss).

Fraiz admitted executing documents that transferred *Maria Maria* first from Latele to himself personally (the First Assignment) and then from himself to Latele US (the Second Assignment) but testified that the transfers, negotiations and related documents were never disclosed by Plaintiff in discovery because the deal was never consummated; and regardless, he claimed, *Maria Maria* was never an intended part of the deal. He testified that including *Maria Maria* in the transfers was a "mistake" he sought to correct with the Addendum. [ECF No. 324, p. 268].

The parties vigorously disagree about the bona fides of the so-called Addendum. Plaintiff contends it is legitimate while Defendants brand it as a fraudulent sham.

The dispute over the legitimacy of the Addendum, as well as disputes over the parties' intent in executing the two Assignments and the legal significance of them (especially since the proposed deal for which they were supposedly created never went through), generate a substantial, critical factual dispute over the ownership of *Maria Maria*.

In support of their contention that the Addendum was fabricated in response to the Motion to Dismiss, Defendants produced documentary evidence and expert testimony that the face of the Addendum indicates it was filed, and should appear, at a

unique page of the records of a particular notary office. [ECF No. 325, pp. 75-85]. Nevertheless, when Defendants' expert inspected those records, a completely different document appeared. Neither party has located any notary records where the Addendum was actually recorded. Thus, Defendants assert the Addendum was not actually filed with that notary office and instead is an after-the-fact creation.

However, as referenced above, the Addendum itself and Mr. Fraiz's testimony support Plaintiff's position that it was created in 2012.

In addition, Plaintiff submitted the declaration (made under penalty of perjury) of Paola Alexandra Munive Castillo, a Venezuelan attorney. [ECF No. 331-2]. In this affidavit, Ms. Munive explained that she prepared, drafted and reviewed the Addendum in 2012, at the request of Xiomara Ruiz, an agent of Mr. Fraiz's. [*Id*.]. Ms. Ruiz also submitted a declaration. [ECF No. 331-1].

Although Ms. Munive's declaration explains that she was involved with the Addendum in 2012, Defendants emphasize that there are several suspicious aspects to her declaration. For example, no metadata or drafts were produced. Ms. Munive, however, proffered an explanation: she said she no longer has the electronic file of the Addendum she drafted in 2012 because she prepared it on a computer she no longer possesses. [ECF No. 331-2, p. 2]. Ms. Munive's declaration did not say anything about the server, but Ms. Ruiz's declaration said she asked Ms. Munive to conduct a search for

9

ESI and metadata on her computer and server but that the search yielded no results. [ECF No. 331-1, p. 1].

Defendants view the absence of metadata/ESI and drafts as evidence further establishing that the Addendum "was in fact fabricated [in 2014] as part of Plaintiff's effort to manufacture standing and explain away its failure to disclose the Transfer Documents and the transactions reflected therein." [ECF 359-1, p. 12].

Given the significance of the Addendum and the diametrically opposed positions on its validity, the Undersigned recently permitted Defendants to take discovery concerning, among other topics, the Transfer Documents described above, the Addendum, the lack of ESI/metadata, and the circumstances surrounding the purported witnessing and filing of the Addendum in Venezuela.

In a November 10, 2014 Order [ECF No. 368], the Undersigned gave Defendants until February 10, 2015 to take that additional discovery. The parties have not advised the Court about the information obtained in discovery or its impact on the critical factual dispute outlined above.

II. **<u>Legal Analysis</u>**

Summary judgment is appropriate only when the Court is satisfied that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under the governing law. *See id.* As the movant, Latele bears the initial burden of showing, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See id.*

When the moving party has the burden of proof at trial (and Latele would have the burden to prove ownership of the *Maria Maria* copyright), that party must "*show affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (reversing summary judgment) (emphasis in original).

As succinctly explained by the Eleventh Circuit, "by definition, a summary judgment ruling involves no findings of fact." *Id.*

Defendants can withstand summary judgment by establishing that, "based on the evidence in the record, there can be more than one reasonable conclusion as to the proper verdict." *Burton v. Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (internal citation omitted). The Court must afford Defendants all justifiable inferences from the evidence in the record, and reasonable doubts must be resolved in Defendants' favor. *See id.* "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Id.* (quoting *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1368-69 (11th Cir. 1982)). "If reasonable minds might differ on the inferences

arising from undisputed facts, then the court should deny summary judgment." *See id.* (quoting *Clemons*, 684 F.2d at 1368-69).

An issue of fact is "material," for purposes of motion for summary judgment, if it is a legal element of the claim, as identified by substantive law governing the case, such that its presence or absence might affect the outcome of the action. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, *reh'g en banc denied*, 974 F.2d 173 (11th Cir. 1992), *cert. denied*, 507 U.S. 911 (1993); *see also Butchkosky v. Enstrom Helicopter Corp.*, 855 F. Supp. 1251 (S.D. Fla. 1993), *aff'd without opinion*, 66 F.3d 341 (11th Cir. 1995) (in summary judgment proceedings, "material fact" is one which is "determinative of parties' duties or rights.").

A dispute is "genuine," for purposes of a motion for summary judgment, where there is evidence which would support the return of a verdict at trial by a reasonable jury in favor of the non-moving party. *Harmony Homes, Inc., v. U.S. on Behalf of Small Bus. Admin.*, 936 F. Supp. 907 (M.D. Fla. 1996), *aff'd*, 124 F.3d 1299 (11th Cir. 1997). Summary judgment may not be granted where the record reflects conflicting versions of material facts which require credibility determinations. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999); *Van Poyck v. Dugger*, 779 F. Supp. 571 (M.D. Fla. 1991). *See also Slusser v. Orange Cnty. Pub. Schs.*, 936 F. Supp. 895 (M.D. Fla. 1996) (in summary judgment proceedings, court may not weigh credibility of the parties, and if

determination of case rests on which competing version of the facts or events is true, case should be presented to trier of fact.)

The factual dispute outlined above is only one of several alleged disputes which Defendants argue in opposition to the partial summary judgment motion. But, given the overarching importance of the dispute in relation to the critical point at issue in the motion (ownership of *Maria Maria*), a lack of certainty over the bona fides of the Addendum is more than sufficient to justify denial of the motion.

There is a plethora of genuine factual disputes swirling around the Addendum and Latele's claim to still be the owner of *Maria Maria*: issues of credibility, issues arising from evidence of possible spoliation, issues flowing from non-frivolous allegations of post-dating the Addendum, issues generated by inconsistencies in testimony, and issues triggered by the untimely production of the Addendum (and how they relate to the legitimacy of the document and when it was actually created). Under these circumstances, the Court must deny Latele's motion for partial summary judgment. *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302 (2d Cir. 2013) (vacating summary judgment in copyright infringement case because, among other reasons, there existed a factual issue as to whether a freelance author had assigned his renewal rights to a publisher). *See generally McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307 (4th Cir. 2014) (reversing summary judgment in Lanham Act lawsuit for trade-dress infringement and unfair competition because of factual issue); *Dorpan, S.L.*

*v. Hotel Melia, Inc.*, 728 F.3d 55 (1st Cir. 2013) (genuine issue of material fact existed in copyright case, leading to summary judgment reversal); *1-800 Contacts, Inc. v. Lens.com,Inc.*, 722 F.3d 1229 (10th Cir. 2013) (reversing summary judgment in trademark infringement action because of material fact issues).

III. **Conclusion**

The Undersigned **denies** Latele's partial summary judgment motion concerning ownership of *Maria Maria.*

**DONE AND ORDERED** in Chambers, in Miami, Florida, December 16, 2014.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All Counsel of Record